[No. 7717.   Decided December 11, 1908.]

ANNA BENSON, *Respondent*, v. TACOMA RAILWAY & POWER COMPANY, AND RAY GARDNER, *Appellants*.[1]

CARRIERS—DEGREE OF CARE—PASSENGERS UNDER DISABILITY. A street car company that knowingly accepts for transportation an intoxicated passenger, is bound to exercise such special care and assistance as his condition requires in order that he may be safely transported.

SAME—EVIDENCE—QUESTION FOR JURY. Whether a street car company failed to exercise due care in allowing an intoxicated passenger to ride on the outside of the car, whence he fell to his death, is for the jury, where it was clearly shown that he was very intoxicated when he boarded the car or soon afterwards, and the conductor admitted knowledge of his intoxication, and by way of impeachment, it was shown that the conductor had stated that he was "drunk as h—l, and kept getting drunker."

APPEAL—REVIEW—HARMLESS ERROR — FAVORABLE TO APPELLANT. The giving of an erroneous instruction at the request of and favorable to the appellant, and one that conflicts with other correct instructions, does not constitute reversible error of which the appellant can complain.

[1]Reported in 98 Pac. 605.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 14, 1908, upon the verdict of a jury entered in favor of the plaintiff, in an action for the wrongful death of a passenger on a street car. Affirmed.

*Blattner & Chester* and *L. B. da Ponte*, for appellants.

*F. D. Oakley* and *John E. Gallagher*, for respondent.

HADLEY, C. J.—This is an action to recover damages for the death of the plaintiff's husband. The defendant, Tacoma Railway & Power Company, owns and operates a line of electric railway between the cities of Tacoma and Puyallup, in Pierce county, in this state. The complaint alleges that, about nine o'clock in the evening of November 4, 1907, the plaintiff's husband, Otto Benson, presented himself as a passenger on one of the above-named defendant's cars, which car was in charge of the defendant Gardner, who was the conductor and agent of the railway company; that when Benson presented himself as a passenger, he was so much under the influence of intoxicating liquor that he was unable to take care of himself; that knowing him to be in such condition, the defendants accepted him as a passenger and undertook to convey him to his destination; that his state of intoxication continued to increase during the time of his transportation, and the defendants knew that he was constantly becoming less able to care for himself as his state of intoxication increased; that the defendants, knowing his condition, carelessly and negligently permitted him to ride in a dangerous position on the platform of the car while he was in such a state of intoxication as to be unconscious and heedless of his danger; that the defendants, knowing his position was dangerous for one in his condition, neglected to exercise proper care and precaution to prevent injury to him, and failed to bestow upon him the degree of attention which his condition required in order to afford him a safe passage to his destination; that while in the aforesaid position and under the circumstances

stated, he fell from the car, striking his head upon the ground, and that he thereby received injuries from which he died.

The answer alleges that, when Benson boarded the car, there was nothing in his appearance or manner to indicate that he was intoxicated, and that his actions thereafter did not indicate that he was intoxicated to such an extent as to be either reckless or indifferent as to his safety, but that he was to some extent intoxicated; but while the car was running at a high rate of speed, he went to the rear platform where the defendant Gardner, the conductor, was, and that the latter immediately requested him to remain inside the car, as it was against the rules of the company to ride upon the platform; that the deceased then and there agreed to return to the car, but carelessly and negligently went too near the edge of the platform, and either stepped off or fell off. The cause was tried by a jury, and a verdict was rendered for the plaintiff in the sum of $4,000. Judgment was entered for the amount of the verdict, and the defendants have appealed.

The first assignment of error is that the court erred in overruling the motion for new trial on the ground that the evidence was insufficient to justify the verdict. It is argued that the testimony taken as a whole does not show that the appellants were guilty of any negligence which in any way contributed to the death of Benson. There was much testimony to the effect that he had been drinking much and often on the afternoon and evening of the day he was injured. One cannot read the record of the testimony and escape the conclusion that he was a badly intoxicated man when he presented himself as a passenger, and the appellants even admit in their answer that he was intoxicated to some extent. The degree of appellants' responsibility in the premises must be determined by the extent to which his intoxicated condition and his inability to care for himself were apparent. The general rule in such cases is stated as follows:

"While a railway company is not bound to accept for transportation without an attendant one who, because of physical

or mental disability, is unable to take care of himself, yet, if its servants do voluntarily accept such a person, unattended, they should render to him such special care and assistance as his condition requires in order that he may be safely transported. And the same principle applies to persons who are known to be partially or entirely helpless on account of intoxication or physical disability." 6 Cyc. 599.

The evidence conflicts as to the deceased's appearance with reference to his apparent inability to care for himself; but the testimony, we think, manifestly shows that, if his intoxicated condition was not apparent at the moment he boarded the car, it must have been apparent almost immediately afterwards. His conduct and manner must have revealed the fact to the conductor, soon afterwards, that he was apparently in a reckless state of intoxication. The conductor's own testimony is sufficient for the jury upon that subject, although he says it was not apparent to him that the deceased was unable to properly care for himself. By way of impeaching his testimony, it was testified that the conductor stated, after the accident and before the trial, that when Benson got on board the car he "was drunk as h—l, and kept getting drunker." Under all these circumstances, we think the only proper course was to leave it to the jury to say whether he was unable to properly care for himself and, if so, whether that condition was known to the conductor, and furthermore whether the necessary care commensurate with his condition and surroundings was extended to him by the defendants. It is true the conductor testified that he told him to leave the platform and go into the car, but it was again for the jury to say whether that was the exercise of sufficient care, having in view his condition and the entire environment. The jury having found that the appellants were negligent in the premises, we· think the trial court did not err in refusing to grant a new trial on the ground of the insufficiency of the evidence.

It is assigned that the court erred in giving the first paragraph of the instructions, because the same is inconsistent with the ninth paragraph, for which reason it is alleged the

charge was misleading and prejudicial. The first paragraph of the instructions follows:

"You are instructed that a street railway company is not bound to accept for transportation without an attendant one who, because of physical or mental disability, is unable to take care of himself. Yet if its servants do voluntarily accept such a person unattended, they should render to him such special care and assistance as his condition requires, in order that he may be safely transported; and this principle applies to persons who are known to be partially helpless on account of intoxication."

The ninth paragraph was given as follows:

"I instruct you that defendants would not have been justified under the evidence in refusing to accept the deceased as a passenger, nor was it their duty to place a guard or watch over him; but simply to use such care or caution for his safety as his conduct or appearance would indicate to a man of ordinary prudence to be necessary under the circumstances. The burden of proof is upon the plaintiff to establish such lack of care, and unless she has done so by a fair preponderance of the evidence, you must find for the defendant."

The first paragraph, it will be seen, is a fair statement of the law according to the authorities cited above, and is not erroneous. The ninth paragraph was requested by the appellants and was given as requested. The requested instruction, we think, was erroneous, not only because it improperly commented upon the facts in issue and invaded the province of the jury, but also because it stated an erroneous rule. The giving of this erroneous instruction at the request of appellants and favorable to them did not, however, constitute prejudicial and reversible error against appellants, although the instruction may have conflicted with other correct ones. *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711.

Other instructions are criticized, and error is assigned upon them; but we think the charge as a whole contains a fair statement of the law applicable to the issues and facts, and we find no error therein. The judgment is affirmed.

RUDKIN, FULLERTON, MOUNT, and DUNBAR, JJ., concur.

CHADWICK, J., took no part.