MARY OLSON, Appellant, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Respondent.

( 175 N. W. 371.)

**Carriers — evidence of intoxication of passenger — negligence of carrier not shown by evidence.**

In an action against a railroad company brought to recover damages occasioned by the death of the plaintiff's husband, where it appeared that the deceased before the accident resulting in his death had ridden as a passenger in a smoking car a distance of approximately 110 miles; that he had been riding in a seat with a man with whom he was personally acquainted; that he was intoxicated to a degree that he staggered when he walked and was unable to converse intelligently; that he was several times up and about the coach, and as the train neared a station other than his destination he walked to the front end of the coach and out onto the platform, from which place he probably fell and was killed, it is *held* that the evidence is insufficient to show any breach of duty on the part of the carrier.

Opinion filed October 20, 1919.

Appeal from judgment of District Court of Ward County, *Leighton,* J.

Affirmed.

*McGee & Goss* and *Sinkler & Eide,* for appellant.

It is unlawful for a railroad company to expel a drunken man, or to

---

NOTE.—For authorities passing on the question of duty of carrier to passenger who has fallen from train, see note in 27 L.R.A.(N.S.) 768.

On intoxication as affecting negligence of passenger, see notes in 40 L.R.A. 134; 47 L.R.A.(N.S.) 736; and L.R.A.1916F, 102, from which it appears that where a railroad company accepts as a passenger one whom they know at the time, because of his intoxication, to be mentally and physically incapable of self-protection, the fact of his intoxication does not excuse them from the duty to use reasonable and ordinary care to prevent injuring him.

allow him to be injured after having taken him on a trip, knowing his condition. Haug v. Great Northern R. R. Co. 8 N. D. 23; Railroad Co. v. Sullivan, 81 Ky. 624, 50 Am. Rep. 186; Railroad Co. v. Velleley, 32 Ohio St. 345; Railroad Co. v. Weber, 33 Kan. 543, 6 Pac. 877; Railroad Co. v. Pitzer, 109 Ind. 179, 6 N. E. 310, 10 N. E. 70; Price v. Railroad Co. 112 Am. St. Rep. 79; Railroad Co. v. Cooper, 16 Am. St. Rep. 334; Benson v. Railway Co. (Wash.) 130 Am. St. Rep. 1096; Kradel v. Railway Co. 15 N. C. C. A. 502.

Where a passenger is received in an intoxicated condition which is apparent to carrier's employee, a higher degree of care toward him is required than in case of a passenger in full possession of his faculties. 5 N. C. C. A. 633; Warren v. Railway Co. 243 Pa. 15; Thompkins v. Oswego, 40 N. Y. S. R. 4.

And the extent of the intoxication of passenger and the conductor's knowledge of his condition and the safety of the place from which he was subjected from the train are questions for the jury. Louisville & N. R. Co. v. Johnson (Ala.) 31 L.R.A. 372.

John E. Green (John L. Erdahl, of counsel), for respondent.

"They [the jury] should have been clearly instructed that if the drinking of the plaintiff contributed at all to his injury, he could not recover." 34 N. W. 714.

Birdzell, J. This is an appeal from a judgment of dismissal. The action is brought by the surviving wife of a deceased person, Henry Olson, to recover damages for the death of the latter. At the conclusion of the plaintiff's case, the trial court, on motion of the defendant, dismissed the case upon the ground that the evidence was insufficient to show negligence on the part of the defendant. The facts shown by the record are that on the 19th of November, 1917, one Henry Olson, a man in middle life, became a passenger upon one of the defendant's trains, boarding the train at Raymond, Montana. He was destined for Minot, North Dakota. As the train neared the station of Bowbells, about 110 miles east of Raymond, he went to the front steps of the smoking car, where he fell from the train and was killed. A witness, Fred Tuk, who was the only witness called by the plaintiff to testify to the facts concerning the accident, stated that he was acquainted with Henry Olson during his lifetime; that he was a passenger on the train the day

Olson was killed and was riding in the smoker; that Olson came into the smoking car from the back end and at the time he came in the witness noticed that he had been drinking, as he staggered when he walked; that Olson sat down beside the witness in the seat; that he was so intoxicated he was unable to converse in an intelligent manner; that he had whisky with him, which he was drinking on the train; that the conductor and other employees of the railroad were in the coach at times when Olson was there and when he was drinking. In explaining Olson's action the witness said: "It is hard to explain what a drunk man will do. He staggered around when he walked, that is the best he could do. He got up and staggered around the car, talking foolish like all drunk men do." From the testimony of this witness it would appear that Olson was in a drunken condition, and that this fact would be noticeable to anyone seeing him move about or hearing him attempt a conversation, but Tuk does not testify that Olson's condition was in fact observed by any of the trainmen. He thought, however, that Olson had gotten up from his seat four, five, or six times and staggered about the car. As to the immediate facts leading up to the accident, the testimony of this witness is that Olson got up and went to the front end of the car; that it was quite dark and he did not come back again. This was as the train approached Bowbells. He staggered and clutched the seats as he went. When the train stopped at Bowbells he notified the conductor that the man was missing, whereupon the conductor remarked that these people think trains are wagons, and said he would send the depot agent back to look for him. The witness went on to Kenmare, and upon arriving there notified Olson's brother-in-law, Ross, that he had fallen off the train, whereupon the witness, Ross, and the deputy sheriff went back to Bowbells and found Olson lying dead about 20 or 30 feet from the track, with a mark on his head indicating that he had come in contact with some blunt instrument. There was a pint whisky bottle near the body, which was not entirely empty.

The only assignment of error argued upon this appeal is that the court erred in directing a verdict on the ground of the lack of evidence of negligence. It is contended that the evidence above narrated constitutes sufficient proof of the negligent omission of duty on the part of the defendant's employees to warrant a verdict favorable to the plaintiff. We are of the opinion that no question of fact upon which liabil-

ity could be predicated is presented by this record. While the evidence does not directly prove that the defendant's trainmen were cognizant of the condition of the passenger, for the purpose of testing the liability of the defendant it might be considered sufficient to warrant an inference that they did know of his condition. Benson v. Tacoma R. & Power Co. 51 Wash. 216, 130 Am. St. Rep. 1096, 98 Pac. 605. Conceding that the trainmen knew of Olson's condition, it does not necessarily follow that there was a breach of duty on the part of the defendant in not taking steps to guard him. The remaining circumstances must be considered. The testimony shows that Olson was seated beside the witness Tuk, with whom he was personally acquainted and who would in all human probability manifest all of the interest in his safety that any employee of the defendant would be expected to manifest under these circumstances. To hold on this record that the defendant was negligent would be equivalent to charging a railroad company with the duty either of putting an intoxicated man off the train at a proper place, or to detail an employee to specially guard him while *en route.* We are aware of no authority which goes to this limit in defining the duty of a carrier of passengers. In the place where this passenger was when his condition was noticed by the agents of the defendant, if it was noticed at all, he was as safe from injury as was any other passenger in the coach. The carrier, then, cannot be charged with negligence except upon the supposition that it would be the duty of a reasonable man to anticipate that the passenger would be likely to leave the car and become exposed to danger.

We have carefully examined the authorities cited by the appellant, but they go no further than to lay down the principle that a carrier whose agents receive and transport a drunken passenger are bound to exercise toward him a higher degree of care than is exercised toward the other passengers, and to employ such measures for his protection from injury as humanity dictates. For instance, as was held in Haug v. Great Northern R. Co. 8 N. D. 23, 42 L.R.A. 664, 73 Am. St. Rep. 727, 77 N. W. 97, 5 Am. Neg. Rep. 467, a railroad company may be liable if it discharged an intoxicated passenger at a station other than his destination, or if it fails to give him proper shelter and care to prevent injuries which are likely to befall an unaccompanied person in an intoxicated condition; and to the same effect is Louisville, C. & L.

R. Co. v. Sullivan, 81 Ky. 624, 50 Am. Rep. 186, 8 Am. Neg. Cas. 286, and other authorities cited by the appellant. This is not a case such as Benson v. Tacoma R. & Power Co. supra, where the conductor, with notice of the condition of the passenger, observed him in a dangerous position upon the platform and took no measures for his safety. As above stated, this passenger, at the time his condition was observed by the agents of the company, if it was observed, was in as safe a place as could be provided for him, and he was apparently attended. Negligence, in our opinion, cannot be predicated upon a supposed duty of seeing that he did not venture to a place where he would expose himself to danger.

The judgment appealed from is affirmed.

BRONSON, J. I concur in the result.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

GRACE, J. I dissent.