Pittman *v*. Hines.

Opinion delivered May 17, 1920.

1.  CARRIERS—DUTY IN OPERATING VESTIBULED TRAINS.—It is the duty of carriers operating vestibuled trains to exercise the highest degree of care for the safety of their passengers which a prudent and cautious man would exercise consistently with the practical operation of the train.

2.  CARRIERS — NEGLIGENCE IN LEAVING OPEN DOOR OF VESTIBULED TRAIN.—In an action for personal injury suffered by an insane man in jumping from an open vestibule door on a railroad train while in the care of attendants, the carrier did not have a right to rely solely upon the insane person's attendants to keep him from jumping where the carrier's employee knew his condition and had promised to render assistance, and it was a question for the jury whether the carrier's employees were negligent in leaving the vestibule door open.

Appeal from Dallas Circuit Court; *Turner Butler,* Judge; reversed.

*Pace, Campbell & Davis,* for appellant.

1.  The proof clearly shows that plaintiff "jumped through the open door of the vestibule" and that the door was open when plaintiff jerked loose from Knight and leaped from the train. The proof clearly warrants the conclusion that members of the crew left the door open, and the question of negligence should have been sent to a jury. The conductor and brakemen knew plaintiff was insane when placed on the train, and carriers of passengers must use due care and attention and exercise special care, prudence and foresight for such passenger's safety. 115 Ark. 505; 108 Ill. App. 565; 75 S. W. 713; 92 Ark. 432; 76 Fed. 734; 87 Ark. 335; 96 Minn. 434; 22 L. R. A. (N. S.) 312; 94 S. W. 293; 4 R. C. L., p. 1216, § 637; 135 Mich. 254; 76 Fed. 734. The questions of negligence are for a jury. 84 U. S. 657; 144 *Id.* 408. It was error to direct a verdict for defendant. 92 Ark. 432; 2 Hutch. on Car., par. 911; 94 S. W. 295; 132 Mich. 695.

2.  Even if plaintiff's attendants were guilty of the grossest negligence, that does not defeat or impair plaintiff's right to recover for the negligence of appellee. An insane person can not be guilty of contributory negligence, nor can the negligence of his attendants be imputed to him to defeat his right to recover. 75 Ark. 479; 72 *Id.* 1; and cases *supra.*

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellee.

Vestibules are provided with doors for the convenience of passengers to go from one coach to another. 115 Ark. 262. The train employees had the right to assume that the three attendants would properly look after the plaintiff. 59 Ark. 180. The court properly instructed a verdict, as there was no case on the evidence for a jury.

Humphreys, J. Appellant, an insane person, instituted suit, through his guardian, in the Dallas Circuit Court, against appellee, Director General of Railroads, who was in charge of and operating the Chicago, Rock Island & Pacific Railroad from Fordyce to Little Rock,

to recover damages for an injury caused by appellant's jumping from a moving train through a vestibule door, alleged to have been negligently opened, or left open, by appellee's employees.

Appellee filed answer, denying negligence and, by way of further defense, pleading exemption on the ground that he had a right to assume that appellant's attendants would look after and keep him from injuring himself.

The cause was submitted to a jury upon the pleadings and evidence adduced by appellant. At the conclusion of appellant's evidence, in response to a motion by appellee for a peremptory instruction, the court instructed a verdict for appellee, and dismissed appellant's complaint. From the judgment of dismissal, an appeal has been duly prosecuted to this court.

The substance of the evidence most favorable to appellant is as follows: F. M. Pearson, sheriff of Dallas County, took appellant, who was crazy, to appellee's depot at Fordyce for the purpose of sending him to the Hospital for Nervous Diseases at Little Rock. The conductor on the train was requested to hold the train until appellant could be put aboard, which request was granted. Appellant was pretty wild and did not want to go. The sheriff informed the brakeman that appellant was insane, obtained his aid in putting him on the train, and requested that he help the attendants *en route,* which he promised to do as best he could. Appellant was placed in the immediate charge of W. A. Knight, a deputy sheriff; C. D. Mallett, a resident of Fordyce going to Little Rock on business, and J. T. Pittman, father of the appellant. Just after leaving Bunn, appellant expressed a desire for water. W. A. Knight, C. D. Mallett and appellant went to the water tank but found no cup. Mr. Mallett went into the smoker in search of a paper cup and left Mr. Knight and appellant standing at the water tank. There was a swinging door between the coach and vestibule. Mr. Knight was unfamiliar with the arrangement of vestibule coaches and thought the vestibule of this train was open like other

trains he had seen. While waiting for Mr. Mallett to return, appellant jumped through the swinging door, leading into the vestible. As he jumped, Mr. Knight gave the alarm and caught him by the coat, but, fearing he might fall to the ground himself, he released appellant and ran back two or three steps to the first window to see where appellant landed, but before, or by the time, he reached the window, the train had passed the place where appellant had fallen, so he did not see him. About the time appellant jumped, the bell was rung by either the conductor or brakeman with the exclamation, ''Who left that door open?'' The train proceeded a short distance and backed up to where appellant had fallen. Mr. Knight reached him first, and, upon examination, found appellant's leg was broken. He was placed aboard the train and brought to Little Rock. En route he suffered quite a little. At Benton, his leg was bandaged by a physician. When he reached Little Rock, his leg was set. He remained in bed four or five weeks, his leg being strapped to boards longer than his leg, with a bucket of brick hanging on the end of the board. At the time J. T. Pittman testified, his son was a cripple, his injured leg being two inches shorter than the other. Mr. Mallett and Mr. Pittman both knew that the coach in which they were taking appellant to Little Rock was a vestibule coach, but thought the outside doors were closed when the train was moving.

Appellant's contention is that appellee is responsible for the injury resulting to him because of his negligence in failing to close the vestibule door, through which he jumped from the moving train after leaving Bunn, and that the court erred in taking the question of whether or not appellant was guilty of negligence in that respect, from the jury. Appellee's first answer to the claim is that the law imposed no duty upon him to keep the outside vestibule doors to his coaches closed; his second answer is that there is no evidence in the record that he failed to close the vestibule door through which appellant

jumped to the ground; and his third answer is that his employees had a right to assume that they would look after appellant and keep him from injuring himself.

(1) It is the duty of carriers operating vestibuled trains to exercise the highest degree of care for the safety of their passengers which a prudent and cautious man would exercise, that is reasonably consistent with 'the practical operation of the train. *St. L., I. M. & S. Ry. Co.* v. *Purifoy,* 99 Ark. 366.

(2) We think the evidence in the case tended to show that the outside vestibule door and coach, in which appellant was riding, was left open after leaving Bunn. It was clearly inferable from the quickness with which appellant landed on the ground, after jumping through the swinging door that opened between the coach and vestibule, that the outside vestibule door was open. Time sufficient, between the jumping and landing, did not elapse for the crazy man to open the outside door. Mr. Knight testified that, before he could run two or three steps and look through the window, the train had moved forward so that he could not see appellant on the ground. The exclamation made by the conductor, or brakeman, who rang the bell, indicated that the door was left open. There being sufficient evidence in the record from which such an inference might be drawn by the jury, the question of whether the employees of appellee negligently failed to close the door became a question to be determined by the jury.

(3) We do not think, under the record in this case, appellee had a right to rely entirely upon the attendants of appellant to keep him from being injured. The employees of appellee had been notified that appellant was crazy, that he was pretty wild and did not want to go to Little Rock. The sheriff had requested the assistance of the brakeman in conducting him to Little Rock, and the brakeman had promised to render every assistance he could. Knowing these facts, it became the duty of the employees of appellee to use the highest degree of dil-

igence which a reasonably prudent man would use, consistent with the proper operation of the train, to prevent appellant from jumping from the moving train and injuring himself. Under the record in this case, it became a question for the jury to say whether appellee could have reasonably anticipated the danger and whether he used the caution and vigilance required of him by the law to prevent the injury.

For the error in peremptorily instructing the jury to return a verdict for appellee, the judgment is reversed and the cause remanded for a new trial.