Syllabus.

## Richmond.

## KERCHER'S ADMINISTRATOR v. RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD COMPANY.

March 22, 1928.

Absent, Burks and Campbell, JJ.

1. EXCEPTIONS, BILL OF—*Error in Refusing to Admit or in Admitting Evidence—Necessity of Bill of Exceptions—Case at Bar.*—In the instant case plaintiff in error assigned as error the action of the court in admitting improper evidence and in refusing to admit proper evidence. The record failed to disclose any bill of exception or certificate of exception taken to the ruling of the trial court in admitting any improper evidence or in refusing to admit any proper evidence.

   *Held:* That the evidence involved not being properly pointed out and made a part of the record, the assignments of error could not be considered on appeal.

2. APPEAL AND ERROR—*Grounds of Objection to Rulings of Court Not Stated in the court Below—Rule XXII of the Supreme Court of Appeals—Case at Bar.*—In the instant case plaintiff in error assigned as error the action of the court in admitting improper evidence and in refusing to admit proper evidence. The grounds of plaintiff in error's objections to the admission or rejection of such evidence was not stated to the trial court.

   *Held:* That under Rule XXII of the Supreme Court of Appeals the assignment could not be considered by the appellate court.

3. APPEAL AND ERROR—*Grounds of Objection to Rulings of Court not Stated in the Trial Court—Rule XXII of the Supreme Court of Appeals—Purpose of the Rule.*—Rule XXII of the Supreme Court of Appeals requiring that objections to the rulings of the trial court shall state the ground of the objection or the objection will not be considered by the appellate court was adopted, not to obstruct petitioners in their efforts to secure writs of error, or appeals, but to make more certain the attainment of the ends of justice. It was intended to put the record in such shape that the case may be heard in the appellate court upon the same record upon which it was heard in the trial court; and to that end to prevent attorneys from dealing unfairly with the trial courts by making objections to writs or other

matters requiring a ruling or judgment of the trial court, without stating the ground of their objection, and, in some instances, when asked to give their reasons, politely informing the court that they prefer to give their reasons in the appellate court.

4. APPEAL AND ERROR—*Grounds of Objection to Rulings of Court not Stated in the Trial Court—Rule XXII of the Supreme Court of Appeals—Purpose of Rule—Case at Bar.*—In the instant case plaintiff in error assigned as error the action of the trial court in modifying, giving and refusing instructions, but as not one of the assignments of error relating to the modifying, giving or refusing of instructions complied with Rule XXII of the Supreme Court of Appeals, they could not be considered on appeal. The grounds of objection were not only not stated with "reasonable certainty," as required by the rule, but were not stated at all, the record simply saying that plaintiff in error "excepted" or "objected" to the action of the court in giving or refusing instructions.

5 APPEAL AND ERROR—*Instructions—Refusal of Further Instructions where the Jury were Fully Informed as to the Law of the Case.*—Where the jury were fully and fairly informed as to the law of the case, from the standpoint of both the plaintiff and defendant, by the instructions which were given, the plaintiff could not be prejudiced by the action of the court in refusing to give other instructions.

6. NEGLIGENCE—*Res Ipsa Loquitur —Carriers—To what Cases the Doctrine of Res Ipsa Loquitur Applies.*—The doctrine of *res ipsa loquitur* applies in cases where the accident is caused by some defect in the roadbed, track or equipment, owned or controlled by the carrier, or is due to the manner in which such equipment is operated by the carrier's servants, but not to accidents beyond the control of the carrier, purely personal to the plaintiff's decedent, and brought about, as in the instant case, by the conduct of such decedent.

7. CARRIERS—*Carriers of Passengers—Presumption of Negligence—Doctrine of Res Ipsa Loquitur—To what Cases the Doctrine Applies—Burden of Proof.*—If an injury happens to a passenger in consequence of the breaking of the vehicle, a defect in the roadway or track, or any of the other appliances owned or controlled by the carrier in making the transit, a *prima facie* case is made for the recovery of damages, and then the carrier must show the absence of any negligence by itself or its servants causing the accident, and that the utmost diligence and observation of duty on its part could not have prevented the injury. In the absence of proof on the part of the carrier to rebut this presumption of negligence, the presumption becomes conclusive.

8. CARRIERS—*Carriers of Passengers—Doctrine of Res Ipsa Loquitur—To what Cases the Doctrine of Res Ipsa Loquitur does not Apply—Burden of Proof.*—On the other hand, where the cause of the injury is plainly

outside of the control of the carrier, and has no connection with the machinery and appliances of transportation or negligence of its servants in operating such instruments of transportation, such accident raises no presumption of negligence on the part of the carrier, and the burden showing such negligence is upon the party who avers it.

9. CARRIERS—*Carriers of Passengers—Action for Death of Passenger—Doctrine of Res Ipsa Loquitur—Burden of Proof—Case at Bar.*—The instant case was an action against a carrier for the death of a passenger. The passenger was killed by falling or jumping from the train. The jury found from the evidence that the roadway and equipment and the management of the equipment complied fully with the requirements of the law and that the accident was caused solely by the conduct of the plaintiff's intestate in leaving the train while it was in motion.

*Held:* That the doctrine of *res ipsa loquitur* had no place in the case, and that the burden was upon the plaintiff to show that his decedent's death was occasioned by the negligence of the defendant.

10. CARRIERS—*Carriers of Passengers—Action for Death of Passenger—Passenger Falling or Jumping from Train—Negligence of Carrier—Case at Bar.*—The instant case was an action against a carrier for the death of a passenger. The passenger was en route from St. Petersburg, Fla., to Washington. When he boarded the train he was in good mental and physical condition. Before reaching Richmond he had shown symptoms of mental aberration, saying that he wished to leave the train and wanted to go to Washington. When the train reached Richmond and was turned over to defendant railroad, the passenger was awake but quiet and went back to sleep. There was nothing in his conduct to make defendant's employees think that he was mentally unbalanced at that time. As soon as the passenger was missed the officials of the carrier did all they could to find him, and when found on the side of the track all that possibly could be done to save his life was done. One of the vestibule doors was found open, but it did not appear whether it was opened by the passenger or another. The fastenings of the door were in perfect condition when the train arrived in Washington.

*Held:* That the railroad was not liable for the death of the passenger.

11. CARRIERS—*Carriers of Passengers—Action for Death of Passenger—Insanity of Passenger—Questions of Law and Fact—Appeal and Error—Conclusiveness of Findings of Jury—Case at Bar.*—The instant case was an action against a carrier for the death of a passenger. Plaintiff contended that his intestate was insane, and that the failure of the defendant to remove him from the train and place him in confinement, or have him constantly guarded on the train constituted negligence as a matter of law. The trial court submitted to the jury the question of deceased's sanity, and the question whether de-

fendant's employees, or agents, failed to exercise reasonable care for the safety of the defendant, and upon both of these questions the jury found for defendant.

*Held:* That the findings of the jury were conclusive on appeal.

12. CARRIERS—*Carriers of Passengers—Action for Death of Passenger—Insanity of Passenger—Negligence of Railroad—Questions of Law and Fact—Case at Bar.*—The instant case was an action against a carrier for the death of a passenger. Plaintiff contended that the passenger was insane, and that it was the duty of the railroad to remove him from the train or place him in confinement, or to have him constantly guarded on the train, and that the failure to do so constituted negligence as a matter of law.

*Held:* That the negligence of the defendant was a question for the jury upon the evidence and not a question of law for the court.

Error to a judgment of the Circuit Court of Caroline county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Grimes & Baer* (of W. Va.) and *Willis & Willis*, for the plaintiff in error.

*W. W. Butzner, R. L. Beale* and *E. Randolph Williams*, for the defendant in error.

WEST, J., delivered the opinion of the court.

On March 5, 1924, Henry Kercher, Sr., aged seventy-eight years, purchased from the Atlantic Coast Line Railroad Company a ticket from St. Petersburg, Florida, to Washington, District of Columbia, and from the Pullman Company a Pullman ticket from St. Petersburg to Washington. He left St. Petersburg in the evening of that day on Atlantic Coast Line train No. seventy-four, which was composed exclusively of

vestibuled cars, including twelve Pullman cars. He occupied lower berth No. 5 in Pullman car No. 111-A, called "Escalon." From St. Petersburg to Richmond, Virginia, the train was operated by the Atlantic Coast Line Railroad Company, and from Richmond to Washington by the Richmond, Fredericksburg and Potomac Railroad Company, over its own tracks.

Henry Kercher, Sr., prior to leaving St. Petersburg and at the time he boarded the train for Washington, was in good mental and physical condition. He purchased his tickets and perfected all his arrangements for the trip. When the train arrived at Jacksonville on the morning of March 6, Mr. and Mrs. M. M. Hall boarded the train for New York and occupied berth No. 6 across the isle from berth No. 5, occupied by Kercher. Mr. Kercher engaged in conversation with Mr. and Mrs. Hall, at intervals, the greater part of that day. He told them he was on his way from St. Petersburg, Florida, to Washington, where he would visit his nephew for a few days and then go on to his home in Wheeling, West Virginia. He had been on a visit to his married daughter, in St. Petersburg. He was perfectly normal until about two o'clock in the afternoon. He then became restless and nervous and seemed obsessed with the idea that they had locked him up in the train and were taking him back to Florida. The porter on the car was with him a good part of the time. The Pullman conductor also talked with him. They did what they could to quiet him, explaining to him that the train was still on its way to Washington and would arrive there the next morning. They finally got him quiet and in bed in his berth, with his clothes on, except his hat and overcoat. He went to sleep and nothing was heard from him until about 1:45 o'clock the next morning, when he aroused Mr. and Mrs. Hall

by thrusting his arm between the curtains in front of their berth. The porter came and with the assistance of others got him back in his berth and quiet again. During the time they were talking to him he said he wanted to get out of the train and wanted to go to Washington. The porter was very attentive to Mr. Kercher and did all he could for his comfort.

The train conductor was changed at Richmond, but the Pullman conductor and the porter went through to Washington.

When the train left Richmond at 3:42 a. m., Kercher was in his berth, awake but quiet, and went back to sleep. He did not say or do anything, after that time, which attracted the attention of the porter or the other passengers on the car. At. 4:42 a. m., a short while before the train arrived at Fredericksburg, the porter discovered that Mr. Kercher was not in his berth. Strict search was made for him throughout the train and he could nowhere be found. One of the vestibule doors on the west side of the "Escalon," or the "St. Regis," which was attached to the south end of the "Escalon," was found open, and it seemed certain that Kercher had left the train through this door, either by jumping from the train or by being thrown out of the door by the lurch of the train.

The train conductor was informed just as the train was leaving Fredericksburg that passenger Kercher was missing. The train left Fredericksburg at 5:05, and passed Quantico, the next telegraph station, at 5:48. The conductor wired the superintendent from Quantico that the Pullman porter on the car "Escalon" reported to him after leaving Fredericksburg that a man passenger was missing. The superintendent promptly notified the section foremen between Richmond and Fredericksburg to take their men and go over the track in search

of the missing passenger, which they did as soon as they could get their men together. They found Mr. Kercher about 8 o'clock a. m. lying on the ground on the west side of the northbound track, about one-half mile south of mile post 30. He was suffering from injuries to his head, face, shoulder and knees, and was in an unconscious condition. He was taken to the hospital in Fredericksburg and given every possible attention, but died of his injuries the following day, without regaining consciousness.

When the train left Richmond all the doors to the "Escalon" and "St. Regis" were closed and securely ·fastened. It is not controverted that an inspection of the Pullman cars, when they arrived in Washington, showed that the doors, hinges and fastenings were in perfect condition.

The record fails to disclose, with certainty, whether the vestibule door was opened by Kercher, or some other person. The doors on the west side of the "Escalon" and "St. Regis" were not opened at Richmond and the train made no stop until it arrived at Fredericksburg.

This suit was instituted in the Circuit Court of Caroline county by the administrator of Henry Kercher, Sr., deceased, against the Richmond, Fredericksburg and Potomac Railroad Company, to recover damages for negligently causing his death. The trial resulted in a verdict and judgment in favor of the defendant, to which this writ of error was allowed.

The plaintiff assigns as error the action of the court in modifying, giving and refusing instructions, in admitting improper and refusing to admit proper evidence, in refusing to set aside the verdict of the jury as contrary to the law and the evidence and without evidence to support it, and in entering the judgment complained of.

[1, 2] The record fails to disclose any bill of exceptions or certificate of exception taken to the ruling of the court in admitting any improper evidence or in refusing to admit any proper evidence. The evidence involved not being properly pointed out and made a part of the record, we cannot consider these assignments. Besides, it does not appear that the ground of plaintiff's objection to the admission or rejection of such evidence was stated to the trial court, and therefore the assignment cannot, under Rule XXII, be considered by this court. The rule reads:

"In civil and criminal cases, all objections to writs of every kind, pleadings, instructions, notices, the admissibility of evidence, or other matters requiring a ruling or judgment of the trial court, shall state with reasonable certainty the ground of such objection, and, unless it appears from the record to have been so stated, such objection will not be considered by this court except for good cause shown, or to enable this court to attain the ends of justice. Questions of venue in civil and criminal cases must be raised in the trial court before verdict in cases tried by a jury, or before judgment in all other cases. Venue, save in exceptional cases, cannot be raised thereafter, nor for the first time in this court."

[3] This rule was adopted, not to obstruct petitioners in their efforts to secure writs of error, or appeals, but to make more certain the attainment of the ends of justice. It was intended to put the record in such shape that the case may be heard in this court upon the same record upon which it was heard in the trial court; and to that end to prevent attorneys from dealing unfairly with the trial courts by making objections to writs or other matters requiring a ruling or judgment of the trial court, without stating the ground of their objection, and, in some instances, when asked to give

their reasons, politely informing the court that they prefer to give their reasons in the appellate court.

[4] Not one of the assignments of error relating to the modifying, giving or refusing of instructions complies with Rule XXII of this court, *supra.*

Nowhere in the record does it appear that the plaintiff informed the court of the ground of his objection to the granting or refusing of the instructions. It simply says the plaintiff "excepted" or "objected" to the action of the court in giving or refusing the instructions. The grounds of the objection are not only not stated with "reasonable certainty," as required by the rule, but are not stated at all. This is not a compliance with the rule. *Kelly* v. *Schneller,* 148 Va. 573, 139 S. E. 275; *Keeny* v. *Commonwealth,* 147 Va. 678, 137 S. E. 478; *Levine* v. *Levine,* 144 Va. 330, 132 S. E. 320; *Burn V. and William Gray* v. *Commonwealth, post* page 571, 142 S. E. 397, decided to-day.

Under the circumstances, the assignments of error relating to the instructions cannot be considered by this court.

[5] However, as it seems to us, the plaintiff loses nothing by his failure to comply with Rule XXII. The jury were fully and fairly informed as to the law of the case, from the standpoint of both the plaintiff and defendant, by the instructions which were given. In such a situation the plaintiff could not be prejudiced by the action of the court in refusing to give other instructions.

This brings us to the last assignment of error, to be considered, which is based upon the court's refusal to set as.de the verdict of the jury and grant a new trial, on the ground that the verdict is contrary to the law and the evidence and without evidence to support it.

The plaintiff (plaintiff in error here), because the

defendant owed Kercher the very highest duty as a passenger on its train and was liable for the slightest negligence, which proper care and foresight could have guarded against, contends that there was a presumption of negligence arising from the mere happenings of the accident, which establishes a *prima facie* case and entitles him, in the absence of proof rebutting this presumption, to recover under the doctrine of *res ipsa loquitur.*

[6] The doctrine of *res ipsa loquitur* applies in cases where the accident is caused by some defect in the roadbed, track or equipment, owned or controlled by the carrier, or is due to the manner in which such equipment is operated by the carrier's servants, but not to accidents beyond the control of the carrier, purely personal to the plaintiff's decedent, and brought about, as in the instant case, by the conduct of such decedent.

In *Walters* v. *N. & W. Ry. Co.,* 122 Va. 154, 94 S. E. 183, the doctrine of *res ipsa loquitur* is stated thus: "The doctrine of *res ipsa loquitur* applies when an accident happens to a passenger who is himself without fault and is caused by a defect in any of those things which the carrier is bound to supply, or is the result of the failure in any respect of the carrier's means of transportation or the conduct of its servants in connection therewith."

[7, 8] At page 154 (94 S. E. 183) Judge Prentis, speaking further for the court says: "* * If an injury happens to a passenger in consequence of the breaking of the vehicle, a defect in the roadway or track, or any of the other appliances owned or controlled by the carrier in making the transit, a *prima facie* case is made for the recovery of damages, and then the carrier must show the absence of any negligence by itself or its servants causing the accident, and

that the utmost diligence and observation of duty on its part could not have prevented the injury. In the absence of proof on the part of the carrier to rebut this presumption of negligence, the presumption becomes conclusive. On the other hand, where the cause of the injury is plainly outside of the control of the carrier, and has no connection with the machinery and appliances of transportation or negligence of its servants in operating such instruments of transportation, such accident raises no presumption of negligence on the part of the carrier, and the burden of showing such negligence is upon the party who avers it."

In 3 Michie on Carriers, pages 2668 and 2674, we find this: "But as already has been said no such presumption arises unless the evidence shows that the injury complained of resulted from the breaking of machinery, collision, derailment of cars, or something improper, or unsafe in the conduct of the business or in the appliances of transportation."

[9] The jury found from the evidence that the roadway and equipment and the management of the equipment complied fully with the requirements of the law and that the accident was caused solely by the conduct of the plaintiff's intestate in leaving the train while it was in motion. When this is true, the doctrine of *res ipsa loquitur* has no place in the case.

The burden was on the plaintiff to show that his decedent's death was occasioned by the negligence of the defendant.

[10] When the train arrived at Richmond and was turned over to the defendant, Kercher was awake but quiet and went back to sleep. There was nothing in his conduct to make the defendant's employees think he was mentally unbalanced at that time, or that it was necessary to remove him from the train to a hos-

pital or confine him on the train. He had paid his fare through to Washington, and had they attempted to remove him from the train they would probably have subjected the company to a suit for damages.

As soon as the search for Kercher on the train was completed, his absence was reported to the train conductor, who telegraphed the fact to the superintendent of the defendant company from the next telegraph station, who telegraphed orders to all section foremen between Richmond and Fredericksburg to go in search of the missing passenger. These orders were executed just as soon as the section foremen could get their men together. When Kercher was found he was placed in charge of a physician who gave him proper attention and took him to the nearest hospital, at Fredericksburg, at the earliest practicable moment, where everything possible was done to restore his vitality.

[11] Plaintiff contends that his intestate was insane, and that the failure of the defendant to remove him from the train at Richmond, or place him in confinement, or have him constantly guarded on the train, constituted negligence as a matter of law. With this contention we cannot concur. The trial court very properly submitted to the jury the question of deceased's sanity, and the question whether defendant's employees, or agents, failed to exercise reasonable care for the safety of the deceased, upon both of which questions they found for the defendant and their findings are conclusive here.

The plaintiff relies upon several cases from other jurisdictions, including *Fox* v. *Mich. Cent. R. Co.*, 138 Mich. 433, 101 N. W. 624, 68 L. R. A. 836, 5 Ann. Cas. 68; *Benson* v. *Tacoma Ry. & Power Co.*, 51 Wash. 216, 98 Pac. 605, 130 Am. St. Rep. 1096; *Pittman* v. *Hines,* Dir. Genl., 144 Ark. 133, 221 S. W. 474; *Stewart et ux*

*v. Houston & T. C. Ry. Co.* (Tex. Civ. App.), 229 S. W. 577.

In the *Fox Case,* plaintiff was a passenger on defendant's train in a beastly intoxicated condition. He was injured by falling or being thrown from the platform of the train while in motion. The court, under the evidence, refused to direct a verdict for the defendant, and left the case with the jury. The verdict was for the plaintiff and judgment was entered accordingly.

In the *Benson Case,* the court held (according to the syllabus): "Whether a street car company failed to exercise due care in allowing an intoxicated passenger to ride on the outside of the car, whence he fell to his death, is for the jury, where it was clearly shown that he was very intoxicated when he' boarded the car, or soon afterwards, and the conductor admitted knowledge of his intoxication * * *."

In the *Pittman Case,* the employees of the railroad were notified that plaintiff, who was in charge of the sheriff, was crazy and did not want to go to Little Rock. The sheriff requested that the brakeman assist him and he promised to assist all he could. The plaintiff jumped from a moving train through a vestibule door, alleged to have been negligently left open by defendant's employees. The court held that it was the duty of the defendant's employees to use the highest degree of care which a reasonably prudent man would use, consistent with the proper operation of the train, to prevent appellant from jumping from the moving train; that "it became a question for the jury to say whether appellee could have reasonably anticipated the danger, and whether he used the caution and vigilance required of him (the defendant) by the law to prevent the injury."

In the *Stewart Case*, the court said (syllabus): "Where a woman, while on a journey, jumped from the window of a train which had stopped, and was placed on a later train by city authorities, the question whether the servants of the carrier, who allowed her to sit by an open window through which she jumped while the train was in motion, knew her mental condition and exercised due care under the circumstances, held, under the evidence, for the jury."

[12] As it seems to us, these cases are in harmony with our holding in the instant case, that the negligence of the defendant is a question for the jury upon the evidence and not a question of law for the court.

The verdict is not contrary to the law, and there is ample evidence to support it.

*Affirmed.*