THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO BURGOS DÁVILA, Defendant and Appellant.

No. 15560. Argued February 1, 1954.—Decided March 10, 1954.

*Guillermo S. Pierluisi* for appellant. *José Trías Monge, Attorney General,* and *Jaime García Blanco, Special Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Antonio Burgos Dávila was tried and convicted by a jury of the crimes of murder in the second degree and attempt to kill under an information alleging that, on or about March 31, 1951 the defendant, who was then an insular police officer, unlawfully killed Santiago Flores Quintero, a human being, and then fired several shots at Javier Jiménez

González with a revolver, inflicting several wounds. This is an appeal from the sentences imposed.

 The first assignment relates to an alleged omission on the part of the trial judge in charging the jury that, "inasmuch as it failed to give instructions on excusable homicide— § 207 of the Penal Code of Puerto Rico—or on justifiable homicide— § 208, read together with § 211 of the same Code—there existing in this case, as it does exist, not only the theory that defendant acted in the discharge of his official duties but also in support of such theory, it being the duty of the court to give instructions touching the justifiable and excusable homicide, pursuant to those Sections of the Penal Code." [1] Defendant now alleges that his defense is predicated on (1) self-defense, and (2) "on the fact that defendant acted in his capacity as a public officer, preserving the peace and carrying out the arrest of the victim in this case, who had assaulted him." He maintains that, since that theory is supported by the testimony of Fermín Mar-

---

[1] The said Sections provide as follows:

"Section 207.—HOMICIDE EXCUSABLE, WHEN. Homicide is excusable in the following cases:

"1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent.

"2. When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, when no undue advantage is taken, nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner.

"Section 208.—JUSTIFIABLE, WHEN. Homicide is justifiable when committed by public officers, and those acting by their command in their aid and assistance either:

"1. In obedience to any judgment of a competent court; or,

"2. When necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty; or,

"3. When necessarily committed in retaking felons who have been rescued or have escaped, or when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest.

"Section 211.—DISCHARGE OF ACCUSED. The homicide appearing to be justifiable or excusable, the person charged must, upon his trial, be fully acquitted and discharged."

tínez, witness for the defense, it was the duty of the court to give instructions on that point.

In the recent case of *People* v. *Méndez*, 74 P.R.R. 853, emphasis was placed on the importance of the instructions to be given by the judge to a jury. The instructions, besides covering all the elements of the crime, should also cover, if there is evidence warranting such instructions, the circumstances surrounding crimes of lesser degrees than the crime charged or embraced therein. *People* v. *Fernández*, 49 P.R.R. 571; *People* v. *Nieves*, 57 P.R.R. 769; *People* v. *Rodríguez*, 35 P.R.R. 395. Also, the instructions should embrace the essential elements of the defenses raised by defendant, where there is evidence warranting it. *People* v. *Villanueva*, 49 P.R.R. 61. In his instructions to the jury, the judge must include all legal questions which, under any reasonable theory, might be involved in the deliberations. See Fricke, *Instructing the Jury in Criminal Cases*, and cases cited, CALJIC (California Jury Instructions Criminal), p. XXXIX. Any defense alleged by defendant and supported by relevant evidence which raises an issue of fact favorable to him must be covered by the instructions setting forth the applicable law. *Stevenson* v. *United States*, 162 U. S. 313; *People* v. *Galarza*, 71 P.R.R. 520; 41 C.J.S. 147, § 368; *Hale* v. *Commonwealth*, 183 S. E. 180; *Crockett* v. *Commonwealth*, 47 S. E. 2d 377.

Regardless of the weakness, inconsistency, or doubtful credibility of the proof, defendant is entitled to have the theory which it embodies presented to the jury with appropriate instructions. 26 Am. Jur. 513, § 515; *People* v. *Fernández, supra; People* v. *Calderón*, 50 P.R.R. 323.

An examination of the transcript of the evidence discloses that there is proof on record sufficient to warrant an instruction on justifiable homicide committed by a public officer. In this connection, see Pearson, *The Right to Kill in Making Arrest*, 28 Mich. C. R. 957. This was precisely

one of the theories advanced by the defense.[2] However, we fail to find that the instructions of the lower court were insufficient in that respect. In support of this holding, we turn to the transcript of the evidence.

According to the testimony of peace officer Fermín Martínez Pérez, who was on duty that night together with the defendant, the victim Flores Quintero walked past both of them and, addressing himself to defendant Burgos, spoke inconsiderately using obscene language. Thereupon Burgos grabbed Flores Quintero by the shoulder and told him to stop talking that way. Flores then struck police officer Burgos with his fists. When this occurred, according to police officer Martínez' testimony, they (both he and Burgos) attempted to arrest Flores who was committing a crime in their presence, namely, assaulting a public officer. Flores' friends, among whom was Javier Jiménez González, the victim in the instant case of attempt to kill, tried to prevent the arrest. Martínez further testified that he saw Jiménez put his hands in the back pocket of Flores' pants "as if looking for something." Then he (Martínez) darted toward Jiménez and pulled him back, and then darted toward the other two who were behind Burgos in order to repeal their assault. While Martínez struggled with those two, Burgos and Flores, who were fighting each other, fell to the ground and then Jiménez "jumped on them." Several shots were heard and, when Martínez looked around, he saw the three of them—Burgos, Quintero and Jiménez—on the ground. "Flores was already wounded—says the witness—and then I saw Burgos get up with his knee on the ground and Javier backing up and a second shot was then fired." According to the witness, Javier Jiménez carried in his hands a knife with which he wounded Burgos on the arm before the latter fired at him.

---

[2] The other theory was self-defense, which was covered by full instructions and about which appellant has nothing to say.

We concede that that evidence supports, although doubtfully, the defendant's theory and that it warranted an instruction on the justification of the killing of Flores while the policeman was attempting to arrest him, which Flores resisted. Of course, the instruction in that case should cover the circumstances under which an officer is justified in resorting to such an extreme measure. Those circumstances are, as stated in 13 Cal. Jur. 624, § 33, the following:

". . . a homicide committed by such an officer [public peace] is not presumed to be justifiable simply because of his official position. The general rule is that homicide is justifiable when necessarily committed in a lawful attempt to arrest a person for any felony committed . . . Where an officer is authorized to make an arrest, he must use as little violence as possible, but he may use such force as appears to him, as a reasonable man, to be necessary to overcome all resistance, even to the taking of life. There must, however, be some real or apparent necessity to justify the resort by an officer to such an extreme measure for his own safety or protection. A resistance that does not threaten great bodily injury can and should be overcome without a homicide.

"An officer is not justified in shooting a person in order to compel submission to arrest on a misdemeanor charge but in attempting to make such arrest, the officer may resist attack made upon him, and, being rightfully on the spot and not legally considered the aggressor, he may take life in his own defense."

However, the alleged arrest which Burgos attempted to carry out on the person of Flores Quintero was, at most, an arrest on a misdemeanor charge, namely, aggravated assault and battery for assaulting a public peace officer. Such an attempt to arrest Flores could not therefore justify manslaughter unless it was committed in self-defense. *People* v. *Wilson*, 36 Cal. App. 589, 172 Pac. 1116. As already stated, the instructions touching self-defense were ample. It may be contended, however—that seems to be appellant's position—that the action of policeman Burgos was necessary in order to overcome the resistance to the

arrest displayed by Flores Quintero and his colleagues. Upon this theory, the jury could rightly conclude that the defendant was not justified in killing Flores, since the latter did not use any weapon,[3] and it was not shown that the defendant was by such resistance in danger of receiving great bodily harm. *People* v. *Bond*, 13 Cal. App. 175, 109 Pac. 150. Furthermore, the evidence of the People proved that Flores Quintero was clubbed several times by police officer Burgos, which might perhaps indicate that defendant could have subdued the victim without resorting to the use of his official police revolver.[4] *People* v. *Newsome*, 51 Cal. App. 42, 195 Pac. 938.

Regarding Javier Jiménez who, according to the evidence of the defense, attacked the defendant with the knife he took away from Flores, the crime against him might perhaps have been justified if the evidence had been believed by the jury as having been committed in self-defense, since there is no evidence of an attempt to arrest him. There is, however, evidence for the defendant that Jiménez attempted to prevent Flores' arrest, and that in order to overcome Jiménez' resistance it was necessary to resort to violence. However, when police officer Burgos resorted to violence against Jiménez he did so rather in self-defense because he felt in danger of receiving great bodily harm. Assuming that the alleged attack with a knife was the felony which defendant Burgos tried to avoid, since it was an assault on his own person, it needs no great effort to conclude that Burgos acted in self-defense. But even assuming that Burgos did, in fact, try to prevent the commission of a felony, we find no omission in the instructions. An examination shows that they are sufficient. As stated before, they cover amply the legal prin-

---

[3] According to the evidence for the People, Javier Jiménez took away from Flores a knife which the latter had in the back pocket of his trousers.

[4] The physician who performed the autopsy testified on several contusions produced, evidently, "by a cylindroid instrument." Other eyewitnesses testified that defendant Burgos clubbed the victim several times.

ciples on self-defense as well as the defense of justifiable homicide committed by a public-peace officer. The pertinent portions of those instructions read as follows:

"It is an admitted fact that defendant is an insular-police officer. Regarding defendant's evidence that, apparently, he was making an arrest, I wish to inform the gentlemen of the jury that arrest means to place a person under custody in the cases and in the manner by law provided. The arrest is made by virtue of actually restricting the liberty of the person arrested, placing him under the official custody of an officer, and no other restriction shall be used than that necessary for his arrest and detention.

"A public-peace officer—a policeman—may make an arrest in compliance with a warrant delivered to him for such purpose, or may, without a bench warrant, detain a person in the following cases: (1) when committing or attempting to commit a public crime in his presence; (2) where a felony has been actually committed and he has rational reasons to believe that the person arrested has committed it; and (3) by virtue of a complaint founded on rational reasons charging the person arrested with the commission of a felony.

"In other words, a police officer is vested with power to arrest a citizen by day as well as at night whenever he has committed a public crime in his presence—whether a felony or a misdemeanor—in his very presence; or whenever a felony has been committed and the police officer has reason to believe that the arrested person has committed it, or under the authority of a complaint founded on rational reasons. In any other case, the peace officer must have a bench warrant issued by a competent officer.

"Evidence has been offered tending to prove that the deceased or alleged victim was ill-tempered. This evidence has not been admitted as justifying, in any manner whatever, the killing by the defendant. A person has no more right to kill a bad man than a good one. Both are entitled to the equal protection of the law. The unjustified killing of either of them —of a bad man or of a good one—is a crime in both cases. The evidence of ill temper should be considered by the jury only as a circumstance illustrative of the facts and the death, and as indicative of the assault and its nature, since it is more likely that a man with a violent and dangerous character would

attack to kill, without provocation, than a quiet and peaceful man. Furthermore, it should be taken into account, when the question of self-defense comes up, to aid in deciding the controversy before the jury as to who started the quarrel; in other words, who was the first aggressor, and whether or not defendant acted in self-defense.

"The carrying of a prohibited weapon is a misdemeanor, but the assault on a person with a knife is a felony.

"If the jury finds that either of the presumptive victims or someone—the evidence tends to prove that one of them furnished the other with the knife—if the jury, I repeat, finds that either of them, or both, carried a knife, it is your duty to infer that the defendant had the right to arrest them if he saw them with a knife.

"If the jury finds that either or both, or someone among them, was carrying a knife, then they were committing a crime and the police officer, in arresting a person under such circumstances, has the right to resort to such degree of violence necessary to compel submission to arrest if he offers resistance.

"*If the jury finds that defendant killed Santiago Flores Quintero and attempted to kill another person in order to resist or avoid the commission of a felony in his very presence, it is your duty to conclude that the manslaughter or attempt to kill was justified.*" (Italics ours.)

 The verdict of guilty rendered in both cases shows that the jury did not believe the theory and evidence of the defendant, who has the burden of proving the mitigating circumstances which might excuse or justify the manslaughter. *People* v. *Torres*, 75 P.R.R. 219. Since the verdict was not contrary to the evidence or to the applicable law, we cannot disturb it. The first error was not committed.

 Appellant alleges in the second assignment that the lower court erred "in failing to charge the gentlemen of the jury on the remarks made by the prosecuting attorney in his argument to the effect that 'if that is what he has learned, to kill from behind notwithstanding his religious spirit,' which is an accusation of a serious, unfair, and improper nature, made before a jury, tending to impress them un-

favorably against the defendant." The defendant introduced evidence on his character. That evidence also tended to prove that defendant is a "religious" man and a regular churchgoer. On the other hand, the testimony of Dr. Antonio Stephens, who performed the autopsy on Flores Quintero, disclosed that the body showed three bullet wounds, namely, one which entered from the back through the front and passed from the scapulo-vertebral region to the right hypochondrium, and the other two in the left buttock.

The record discloses that the defense objected to the remarks made by the prosecuting attorney in his argument to the jury, that "if that is what he [the defendant] has learned, notwithstanding his religious spirit . . ." Apparently, those remarks of the prosecuting attorney were directed to the defendant. The judge then asked the defendant whether his objection was directed rather to the conduct of the prosecuting attorney, to which the defense replied in the affirmative. Since the stenographer did not take down the prosecuting attorney's full argument, we are not in a position to determine the trend of the argument which the prosecuting attorney was developing at that moment, or whether the alleged remarks prejudiced the defendant's rights. *People* v. *Archeval*, 74 P.R.R. 478, 485. In any event, as stated before, there was evidence before the jury on those particulars and we believe that the remark made by the prosecuting attorney, though improper, does not carry with it, in view of the attendant circumstances and the nature of the remark, a reversal of the judgments. *People* v. *Ojeda*, 66 P.R.R. 399.

The third and fourth assignments are directed to the action of the court in admitting, over defendant's objection, the testimony of two witnesses on certain statements made by one of the police officers who were in defendant's company the night of the events after the criminal offenses were committed. The evidence challenged by defendant in the third error is as follows:

"Q. Did police officer Burgos go back to the scene of the crime?

"A. With a revolver in his hand.

"Q. Did he go back?

"A. He took about four or five steps back.

"Q. Did anyone intervene?

"A. Police officer Vélez.

"Q. What did Vélez say?

"A. You are going to kill those people; don't do that, come on. He tried to take him back with him.

"Lic. Pierluissi: That should be stricken out, because it occurred subsequent to the events and tends to impress unduly the gentlemen of the jury.

"Hon. Judge: They are concomitant facts.

"Lic. Pierluissi: Exception."

With respect to the fourth error, the evidence offered is as follows:

"Q. Were you going to pick up your brother Javier?

"A. Yes, sir.

"Q. Were you able to?

"A. No, sir, because the police officer said when I bent down: 'If you pick him up, we'll shoot you.'

"Q. Who?

"A. Police officer Vélez and this one.

"Q. Then what happened?

"A. They shouted, 'Let them take them to the hospital'; and they said, 'Let them die there.'

"Lic. Pierluissi: The irrelevant facts should be stricken out.

". . . . . . . .

"Hon. Judge: They are contemporaneous facts. They concern the defendant, and the defendant says: 'Let them die there.'

"Lic. Pierluissi: Exception.

"Hon. Judge: Who said that?

"A. Vélez and Burgos.

"Q. Did Vélez and Burgos say 'let them die there'?

"A. Yes, sir.

"Q. Who was that Burgos?

"A. The defendant.

"Q. What about Vélez?

"A. He is the police officer who was there.

"Lic. Pierluissi: I object.

"Hon. Judge: Overruled.

"Lic. Pierluissi: Exception."

Appellant argues that that evidence was offered for the sole purpose of impressing the jury unduly, and that the evidence, bearing "on acts which occurred subsequent to the events, was immaterial and should not have been admitted."

Specifically, the statements made in the case at bar by defendant Burgos, which are covered by the assignment, were admissible to show defendant's intention and motive in firing at Javier Jiménez González, his victim in the case of attempt to kill. According to the evidence of the People, which was believed by the jury, Burgos fired at Jiménez as the latter bent down to pick up Flores Quintero and remove him to the hospital. Defendant Burgos' intention was undoubtedly to prevent the removal of the victim to the hospital and, in order to accomplish his intention or design, he fired and wounded Jiménez. His statements were therefore admissible in establishing that intention, motive, or design. Furthermore, the information and the evidence of the prosecuting attorney tended to prove murder in the second degree. He could have therefore proved circumstances tending to show that defendant had an abandoned and malignant heart. *People* v. *Rodríguez*, 34 P.R.R. 443, 445; *People* v. *Belardo*, 50 P.R.R. 491; *People* v. *Torres*, 75 P.R.R. 231; 13 Cal. Jur. 603, § 18. His statements in that connection were relevant and, therefore, admissible in evidence.

We likewise believe that police officer Vélez' statements also tended to prove that element of the crime. Vélez was an eyewitness of the occurrences and was in a position to appreciate the defendant's frame of mind at that moment. As a result of that appreciation, he said to defendant: "You are going to kill those people; don't do that, come on." We need not discuss whether witness Gautier's testimony relating to Vélez' statements should have been excluded as being hearsay evidence, for the objection raised by the

defense was that they were irrelevant. However, that such statements are relevant to prove that defendant Burgos, as a result of his frame of mind and behavior, had then and there an abandoned and malignant heart—an important element of the crime charged—is obvious. But even if we held that the admission of Vélez' statements was an error, such error would not be reversible. Defendant Burgos' statements along the same line had already been before the jury, and the remaining statements made by Vélez would add very little to unduly impress the jury. These statements were likewise admissible as part of the *res gestae.* See *People* v. *Gelpi*, 59 P.R.R. 556; *People* v. *Rosa*, 37 P.R.R. 400; *People* v. *Flores*, 17 P.R.R. 166; VI Wigmore *On Evidence* (3d ed.), p. 177 *et seq.*

None of the errors assigned having been committed, the judgments appealed will be affirmed.