# Richmond

GARLAND HALE v. COMMONWEALTH.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*Tom E. Gilman,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

The plaintiff in error has been found guilty of murder in the second degree and sentenced to the penitentiary for a term of twenty years.

Prior to the homicide, Sylvester Peacock, the deceased, lived with his wife and two daughters in the city of Portsmouth. The accused, a young man twenty-three years of age, was a welcome and frequent visitor in their home, where he was apparently paying attention to Margaret Peacock Weaver, one of the daughters, who was separated, but not divorced from her husband. There is no suggestion of any ill will between the accused and the deceased before the unfortunate occurrence hereinafter related.

On the night of the homicide, May 5, 1934, the accused had taken Mrs. Weaver in his car to a dance in the city of Portsmouth. Returning therefrom they arrived at the Peacock home between one and two o'clock in the morning. As to just what then occurred, the evidence is in conflict.

Mrs. Peacock and her daughter, Mary, testifying for the Commonwealth, said that upon the arrival of Hale and

Mrs. Weaver, Mrs. Peacock went out to the car and suggested to Mrs. Weaver that the latter had better spend the night with a friend, since Mr. Peacock was angry and "there would be an argument" if she, Mrs. Weaver, came in.

Peacock, having heard this conversation, called to Mrs. Weaver demanding that she get out of the car and come into the house. Upon her failing to do so promptly Peacock went to the car, caught Mrs. Weaver by the arm and undertook to pull her out of the machine. Thereupon Hale interposed saying, "Let me explain, Mr. Peacock." Peacock replied, "I don't want any explanation," and again took Mrs. Weaver by the arm. Hale shoved in between the father and the daughter and struck Peacock in the face with his fist. Peacock then turned and went into the house.

The motor of the Hale car was running, and sensing that there would be trouble, Mrs. Peacock and her daughter, Mary, urged Hale and Mrs. Weaver to leave. Instead of doing this Hale turned off the ignition, went around to the rumble seat and took therefrom a lug wrench saying, "Let the son of a bitch come on. I am ready for him."

Just about that time Peacock came out of the house carrying an iron poker and started toward the accused who was standing in the street near the rear of the automobile. When Peacock got within ten feet of the accused, the latter threw the wrench striking Peacock on the forehead. The accused then ran towards the opposite side of the street. Peacock fell, got up again, started to follow the accused and fell upon reaching the middle of the street. The accused returned, seized Peacock by the shoulders and knocked his head several times against the pavement.

According to the testimony of Mrs. Weaver and Hale, the only other witnesses to the homicide, when they arrived at the house Mrs. Peacock came to the door and said to Mrs. Weaver, "Don't come in, go to Louise's for

the night, or some place, your father is drinking and there will be trouble."

The father then came out. He showed evidences of having been drinking heavily, and angrily demanded that Mrs. Weaver come into the house. This Mrs. Weaver refused to do unless her father would first promise not to beat her. Thereupon Peacock opened the door to the automobile, caught Mrs. Weaver by the arm and attempted to strike her in the face. Hale intervened saying, "Wait a minute, Mr. Peacock. Don't be like that, let me explain." Hale then turned off the motor, got out of the car and endeavored to pacify Peacock, but without avail. Peacock caught Hale by the collar, the two men scuffled, and Hale struck Peacock in the face with his fist.

Peacock then disappeared in the house and Hale endeavored to start the car so as to leave, as suggested by Mrs. Peacock. In the excitement he flooded the carburetor and was unable to start before Peacock returned armed with the poker. The accused then picked up the wrench for the purpose of protecting himself. Peacock approached and with the poker struck at Hale who dodged behind the car. Just as Peacock drew back to again strike at Hale with the poker, Hale threw the wrench which struck Peacock in the forehead. The accused then started to run across the street.

Turning, he saw that Peacock had fallen. The accused went back to Peacock, caught hold of his arm and tried to lift him. He denied having knocked Peacock's head on the pavement as testified to by Mrs. Peacock and Mary.

There is no further conflict in the evidence. In a few minutes the police patrol, answering the call of Mrs. Peacock, appeared on the scene. Hale assisted the police officer in putting Peacock in the patrol wagon and accompanied them and Mrs. Peacock to the hospital. Upon reaching their destination Peacock was found to be dead, according to the undisputed evidence, from the blow on the forehead inflicted by the wrench.

The principal assignment of error is the failure of the court to grant Instruction No. 7 requested by the accused in the following language: "The court instructs the jury that when one without fault himself is attacked by another in such manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there is reasonable ground to believe the danger imminent that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearance and without retreating, kill assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable; although it may afterwards turn out that the appearances were false, and that there was in fact neither . design to do him some serious injury or danger that it would be done. But of all this the jury must judge from all the evidence and circumstances of the case."

According to the testimony of Mrs. Weaver and that of the accused, the latter, without fault on his part, was attacked by a drunken man armed with a poker. In order to preserve his own life, or to prevent serious bodily harm to himself, the accused threw the wrench which struck and killed the deceased. If the killing was committed under these circumstances it was clearly a case of justifiable homicide in self-defense. *McCoy* v. *Com.*, 125 Va. 771, 775, 99 S. E. 644; *Puckett* v. *Com.*, 157 Va. 800, 806, 807, 160 S. E. 19; *Dodson* v. *Com.*, 159 Va. 976, 979, 167 S. E. 260.

■ Whether the homicide occurred under the circumstances related by the witnesses for the accused, or under those related by the witnesses for the Commonwealth, was a question which the accused had the right to have submitted to the jury under the instruction requested. The refusal of the trial court to do so was reversible error. *Tucker* v. *Com.*, 159 Va. 1038, 1048, 167 S. E. 253.

██ In fact, the brief of the Attorney-General admits that the instruction should have been given. It says: "We see no reason why Instruction No. 7 was refused by the trial court, as it contains a correct principle of law advising the jury that where a person who is without fault is attacked under certain circumstances he need not retreat." It is argued by the Attorney-General, however, that the refusal to give this instruction was not error because the trial court had not given any instruction for the Commonwealth dealing with the duty of the accused to retreat. This argument is not sound. The accused was entitled to have his theory of the case submitted to the jury by proper instructions even though the Commonwealth had not seen fit to ask for appropriate instructions on the point at issue.

██ Indeed, the accused was entitled to have the jury told that a killing under the circumstances stated in Instruction No. 7 was "justifiable" rather than "excusable" homicide. The distinction between the two is fully and clearly treated by Chief Justice Campbell in *Dodson* v. *Com.*, 159 Va. 976, 167 S. E. 260.

In view of the fact that the case must be remanded for a new trial it will not be necessary for us to pass upon the assignment of error that the evidence on behalf of the Commonwealth did not justify a conviction of murder in the second degree.

██ ██ The petition for a writ of error raises a serious question as to Instructions A and C, granted on behalf of the Commonwealth. These instructions told the jury, among other things, that self-defense, where relied upon by the accused, must be established "by a preponderance of the evidence." This places too great a burden upon the accused. As we said in *Sims* v. *Com.*, 134 Va. 736, 754, 115 S. E. 382, 388, "The prisoner never has to prove any fact either beyond a reasonable doubt or by a preponderance of the evidence. All he has to prove in any case is such a state of facts as will raise a reasonable doubt

in the minds of the jury as to the existence of the fact or facts sought to be established by the Commonwealth, * * * "

■ The lower court would. no doubt, have eliminated the vice in the instructions had its attention been directed thereto. The failure to point out the defect at the trial below precludes our considering it as reversible error. See Rule XXII.

The other assignments are without merit.

For the error committed by the trial court in refusing to grant Instruction No. 7, the case will be reversed and remanded for a new trial.

*Reversed and remanded.*