## Richmond
JOSEPH HUGH CAMPBELL

v.

COMMONWEALTH OF VIRGINIA

No. 1048-90-1

Decided August 11, 1992

COUNSEL

Anthony F. Troy (Alan D. Albert; William P. Robinson, Jr.; Mays & Valentine; Robinson, Zaleski & Lindsey, on briefs), for appellant.

Robert Q. Harris, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## ON REHEARING EN BANC

OPINION

BENTON, J.—This Court granted a rehearing *en banc* from a divided panel decision solely to determine whether the "ends of justice" exception to Rule 5A:18 should be invoked because an erroneous jury instruction may have deprived Joseph Hugh Campbell of a fair trial. Since a proper description of the elements

of the offense was vital to ensure a fair trial, we hold that the "ends of justice" exception should be applied and we reverse the conviction. We leave unchanged the panel's disposition of other issues originally raised on appeal. *See Campbell v. Commonwealth*, 13 Va. App. 33, 409 S.E.2d 21 (1991).

## I.

■ During Campbell's jury trial for forging a public record in violation of Code § 18.2-168, the jury was instructed as follows:

### JURY INSTRUCTION EIGHT

To act with the intent to defraud means to act with an evil intent, or with the specific intent to deceive or trick. It is sufficient if it was the intention of the defendant to frustrate the administration of a law or if his actions were prejudicial to, or a fraud upon, a Commonwealth or a governmental unit or tended to impair a governmental function.

This was an incorrect statement of law. While the first sentence correctly defined intent to defraud, the second sentence effectively eliminated *mens rea* as an element of the offense. The use of the conjunction "or" in the second sentence allowed the jury to find Campbell guilty of forgery based solely on an action prejudicial to or tending to impair a governmental unit, and, thus, it allowed the jury to convict Campbell without finding that he had acted with intent to defraud. Intent to defraud is an element of the offense of forgery of public documents. *See Hanbury v. Commonwealth*, 203 Va. 182, 187, 122 S.E.2d 911, 914-15 (1961).

The Commonwealth argues that Campbell did not preserve for appeal his objection to the jury instruction.[1] Campbell argues that he offered at trial an instruction embodying a theory contrary to Instruction Eight and, thus, satisfied the contemporaneous objection rule. *See Pilot Life Ins. Co. v. Karcher*, 217 Va. 497, 229 S.E.2d 884 (1976). Campbell's Instruction N, which was refused, stated:

---

[1] Rule 5A:18 provides that:

No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

The prosecution must further prove beyond a reasonable doubt that the defendant acted with specific intent, that is that the defendant intended to inflict the specific harm prohibited by the offense.

To establish specific intent the prosecution must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law.

It is not enough, therefore, to believe beyond a reasonable doubt that the defendant purposely did an act wrongful in itself; the prosecution must also prove beyond a reasonable doubt that the defendant intended to impose a harm upon another in a way prohibited by law. Such intent may be determined from all the facts and circumstances surrounding the case.

Because the granted Instruction Eight purported to define "intent to defraud" and the refused Instruction N addressed "specific intent," we cannot say that Campbell's refused instruction "propound[ed] the contrary theory to one set forth in [the] granted instruction." *Id.* at 498, 229 S.E.2d at 885.

Campbell claims error because Instruction Eight incorrectly defined "intent to defraud." However, at trial, Campbell objected to the instruction only:

on the grounds that [the instruction] fails to point out that intent to defraud means to deprive under the circumstances of this case one of tangible rights.

Although the objection raised at trial is not the same as the issue raised on appeal and although Rule 5A:18 generally precludes this Court from entertaining issues that were not properly brought to the attention of the trial judge, we review this issue to attain the "ends of justice." Rule 5A:18.

## II.

"[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." *Jimenez v. Commonwealth*, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). That duty arises even when "trial counsel neglected to object to the instruction." *Id.* at

248, 402 S.E.2d at 679. Obviously, the proper description of the elements of the offenses is vital to a defendant. Attaining the "ends of justice" requires correction of an instruction which allows a jury to convict a defendant without proof of an element of a crime. Instruction Eight was so defective that it allowed the jury to convict Campbell of forgery even if the jury concluded that Campbell lacked an intent to defraud. Intent to defraud, however, is a necessary element of forgery. *Fitzgerald v. Commonwealth*, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984).

> [A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to *convince a trier of fact* beyond a reasonable doubt of the existence *of every element* of *the offense.*

*Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (emphasis added). The jury cannot be said to have reached the level of certitude constitutionally required to convict when the jury was instructed that it could find the defendant guilty even though all of the elements of the offense had not been proved beyond a reasonable doubt.

> Unless [the appropriate] elements are defined by instructions available to the members of the jury during their deliberation, they cannot properly determine whether the Commonwealth has carried its burden. . . . "It is always the duty of the court *at the proper time* to instruct the jury on all principles of law applicable to the pleadings and the evidence," and "a correct statement of the law applicable to the case, when the law is stated, . . . [is one of the] essentials of a fair trial."

*Dowdy v. Commonwealth*, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979) (citations omitted); *see also Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988).

The instructions given by the trial judge relieved the Commonwealth of its burden to prove criminal intent by improperly informing the jury that it could convict Campbell simply if the jury found a prejudicial effect or impairment on a governmental function. Thus, the jury could have believed Campbell's defense — that he had no intent to defraud because his statement to the clerk

who changed the record was only intended as a joke — and yet convicted him by finding that his conduct "tended to impair a governmental function." This occurrence deprived Campbell of the process that he was due.

> "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value - as a criminal defendant his liberty - this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt."

*In re Winship*, 397 U.S. 358, 364 (1970) (quoting *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958)). This doctrine, which is the cornerstone of our system of criminal justice, "requires more than simply a trial ritual." *Jackson*, 443 U.S. at 316-17.

The Commonwealth misconstrues the holding of *Mounce v. Commonwealth*, 4 Va. App. 433, 357 S.E.2d 742 (1987), when it claims the "ends of justice" provision requires reversal only if the error "*invariably* works a miscarriage of justice." (emphasis added). In *Brown v. Commonwealth*, 8 Va. App. 126, 380 S.E.2d 8 (1989), this Court emphasized that, "[a]lthough the ends of justice exception is narrow and is to be used sparingly, [the Court will not place] too restrictive an interpretation upon *Mounce*." *Id.* at 132, 380 S.E.2d at 11. Specifically, the Court explained:

> The language in *Mounce* that to avail himself of the rule the defendant had to affirmatively show that "a miscarriage of justice [has] occurred, not . . . that a miscarriage *might* have occurred" requires that the error be clear, substantial and material.

*Id.* Unquestionably, the error in instructing this jury meets that standard. No amount of sophistry can avoid the hypothesis that the jury believed the defense testimony, that Campbell lacked an intent to defraud, yet convicted him because of the incorrectly drawn instruction that authorized conviction based on a finding that his conduct "tended to impair a governmental function."

The resolution of this dilemma is not found in weighing Campbell's hypothesis of innocence against the quantum of proof that the Commonwealth offered in support of guilt. If the jury believed the testimony of Campbell, as it was entitled to do, the quantum of contrary evidence was irrelevant.

Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness.

The credibility of witnesses is a question exclusively for the jury, and where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of the evidence as equally balanced, they have the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly.

*Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987) (quoting *Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949)).

■ Campbell is entitled to have a jury trial in which " 'the law has been clearly stated [to the jury] and . . . the instructions cover all issues which the evidence fairly raises.' " *Darnell*, 6 Va. App. at 488, 370 S.E.2d at 719. A fundamental hallmark of a fair trial is that "instructions . . . should inform the jury as to the law of the case applicable to the facts in such a manner that [the jury] may not be misled." *Cooper v. Commonwealth*, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986).

■ When an instruction allows a jury to convict a defendant without proof of an essential and necessary element of the charged offense, the Commonwealth is not entitled to an appellate affirmance based solely on application of Rule 5A:18. If we give effect to the presumption that a jury follows the trial judge's instruc-

tions, *LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied*, 464 U.S. 1063 (1984), it is not appropriate for this Court to affirm a conviction when the jury could have convicted the defendant for otherwise innocent behavior. "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.' " *Darnell*, 6 Va. App. at 488, 370 S.E.2d at 719 (quoting *Dowdy*, 220 Va. at 116, 255 S.E.2d at 508).

■ The error in this case was patently harmful and was "so contrary to fundamental notions of justice that to permit it to pass uncorrected would seriously undermine the integrity of our judicial system." *Brown*, 8 Va. at 133, 380 S.E.2d at 11. "The state's interest in prevailing at trial and upholding the verdict on appeal must be tempered by its duty to work for a just, fair and accurate adjudication of criminal cases." *Id.* at 133 n.3, 380 S.E.2d at 11 n.3.

For these reasons we reverse the conviction and remand for a new trial.

*Reversed and remanded.*

Koontz, C.J., Bray, J., and Elder, J., concurred.

Barrow, J., concurring.

Although I concur with the majority opinion, I write separately to explain why, in my opinion, the contemporaneous objection rule does not bar a reversal in this appeal. By writing separately, I seek to express those principles that underlie my decision and urge the uniform application of these principles to like cases.

The contemporaneous objection rule embodied in Rule 5A:18 is not without exception. Even where an objection is not stated, an error may be the basis for reversal (1) "for good cause shown," or (2) "to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. In addition, where "a party has no opportunity to object to a ruling or order at the time it is made," the party's failure to object shall not prejudice him or her on appeal. Code § 8.01-384(A). Thus, three reasons may exist for addressing an assertion of error on appeal, even if a timely objection is not made at trial.

"[G]ood cause" relates to the reason why an objection was not stated at the time of the ruling. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986); *Townes v. Commonwealth*, 234 Va. 307, 319, 362 S.E.2d 650, 656-57 (1987), *cert. denied*, 485 U.S. 971 (1988) (pro se representation is not good cause for failing to object); *Snurkowski v. Commonwealth*, 2 Va. App. 532, 536, 348 S.E.2d 1, 3 (1986) (futility of an objection is not good cause for failing to object). Similarly, the lack of an "opportunity to object" also relates to the reason why an objection was not made at the time of the ruling. *Jones v. Commonwealth*, 194 Va. 273, 280, 72 S.E.2d 693, 697 (1952) (counsel "taken by surprise" by trial court's response to question from jury); *Mason v. Commonwealth*, 7 Va. App. 339, 346, 373 S.E.2d 603, 606 (1988) (counsel "taken by surprise" at trial court's instruction to the jury). Thus, the statutory exception is subsumed under the "good cause" exception because both relate to the reason why an objection was not timely made.

The "ends of justice" exception, on the other hand, addresses the effect of the error, not the reason for the failure to object to the error. The purpose underlying the contemporaneous objection rule is helpful in understanding the "ends of justice" exception.

The rule serves "to avoid unnecessary appeals, reversals and mistrials by allowing the trial judge to intelligently consider an issue and, if necessary, to take corrective action." *Campbell v. Commonwealth*, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc). In some instances, this goal is already assured by a party's incentive to object to an error in order to increase the opportunity for a favorable disposition and, also, because of the party's own desire to avoid a retrial and its accompanying expense and anxiety. Thus, need for applying the rule is greater where a party's incentive to object is not present.

For example, little incentive exists for a defendant to complain at trial about the legal insufficiency of the case presented against the defendant. If the case is legally insufficient and the verdict of the trier of fact is for the defendant, all is well. If, on the other hand, the verdict is against the defendant, the defendant can appeal and, but for the contemporaneous objection rule, obtain reversal because of the legal insufficiency of the action. Upon reversal, the cause will be dismissed without the possibility of a retrial. Thus, except for the contemporaneous objection rule, the only in-

centive prompting a defendant to challenge the sufficiency of the evidence at trial is the cost and delay of an appeal. In fact, the threat that the trial court might allow the Commonwealth to reopen its case in response to such a challenge would be a disincentive to raise the issue at trial, absent the contemporaneous objection rule. Thus, only when the record affirmatively shows that a criminal defendant "has been convicted of a crime of which under the evidence he could not properly be found guilty," does the "ends of justice" exception permit an appellate court to review the legal sufficiency of the evidence underlying the conviction where the issue was not raised at trial. *Ball v. Commonwealth*, 221 Va. 754, 758-59, 273 S.E.2d 790, 793 (1981); *see also Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987).

However, the "ends of justice" exception is not always so restrictively applied. *See Cooper v. Commonwealth*, 205 Va. 883, 889, 140 S.E.2d 688, 692-93 (1965) (admission without objection of unconstitutionally obtained confession); *Glasgow v. Peatross*, 201 Va. 43, 47, 109 S.E.2d 135, 138 (1959) ("confusing and erroneous" instruction given without objection); *Brown v. Commonwealth*, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989) (defendant's sentence based on pre-sentence report describing a different burglary from that for which he was convicted). Where a party's desire for a favorable outcome and desire to avoid a retrial act as incentives for the party to object to adverse rulings, the need for strict adherence to the contemporaneous objection rule, although not eliminated, is less compelling. In those instances, an error may be the basis for reversal, when not objected to, if it is "clear, substantial and material." *Brown*, 8 Va. App. at 132, 380 S.E.2d at 11. To allow an error meeting those criteria "to pass uncorrected would seriously undermine the integrity of our judicial system." *Id.* at 133, 380 S.E.2d at 11.

To be "clear" the error must be apparent under existing statutory or case law without the necessity of further judicial interpretation and must not have been acquiesced in, either expressly or impliedly, by the complaining party. *See Cooper*, 205 Va. at 889, 140 S.E.2d at 692-93. A trial judge may reasonably rely on the parties to bring to the trial judge's attention unresolved questions of law and may assume that one who does not object to certain rulings, for example the introduction of patently inadmissible evi-

dence, acquiesces in the rulings for his or her own benefit.

To be "substantial" the error must affect an essential element of the trial. *See Glasgow*, 201 Va. at 47, 109 S.E.2d at 138. It must affect a part of the trial without which the trial could not have properly been conducted.

Finally, to be "material" the error must be important enough to affect the outcome of the trial. Otherwise, the error would be harmless. *See Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

In this case, because the error was in the content of an instruction given, the effect of a reversal is not a dismissal but a remand for a new trial. The defendant, consequently, had an incentive to object to the error, as he did (albeit on other grounds), without being prompted by the contemporaneous objection rule. Therefore, the "ends of justice" exception applies to this error if it is "clear, substantial and material."

The error in this case was "clear." It is undisputed that the instruction complained of on appeal allowed the jury to find the defendant guilty if it found that his action was prejudicial to a governmental unit or tended to impair a governmental function without finding that he did so with an intent to defraud, an element of the crime with which he was charged. The instruction was contrary to existing law. *See Hanbury v. Commonwealth*, 203 Va. 182, 187, 122 S.E.2d 911, 914-15 (1961). The defendant objected to the instruction at trial, although on different grounds; he did not acquiesce, even impliedly, in the instruction.

The error was "substantial" in that it affected an essential element of the trial — the instructions to the jury on the elements of the crime charged. Without being told what the elements of the crime were, the jury could not have properly decided the case.

Finally, it was "material." If the jury followed the instruction, as we must assume it did, it could have found the defendant guilty without having found that he committed the crime. The instruction did not conflict with a correct instruction that might have caused the jury to ignore it. It was, instead, an incorrect attempt to further define the element of intent required. Thus, the jury had no reason to question its applicability.

For these reasons, I join in the majority's opinion and its decision to reverse the defendant's conviction and remand the proceeding for a new trial.

Moon, J., with whom Coleman, J., Duff, J., and Willis, J., join, dissenting.

I dissent. I believe the majority's decision represents a substantial, and in my view unfortunate, departure from established precedent which, if applied, would have prevented appellate review and reversal of this case. We are precluded, in my opinion, by Rule 5A:18 and the Supreme Court's decision in *Townes v. Commonwealth*, 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987), *cert. denied*, 485 U.S. 971 (1988) from considering on appeal the defect in Instruction No. 8, to which no objection was made in the trial court. Nevertheless, the majority reaches the merits of the issue by disregarding the requirements of the "ends of justice" exception which allows an appellate court to disregard the rule *only* where necessary to correct a clear miscarriage of justice. No miscarriage of justice exists in this case. In fact, the majority concedes that the appellant has done no more than establish a "hypothesis" that a scenario could be constructed by which the jury could have applied the erroneous part of the instruction and thereby improperly rejected the defendant's claim that he changed the public records "as a joke."

The effect of disregarding the requirement that an appellant establish that the error caused a miscarriage of justice may appear innocuous, but its impact is significant and far-reaching and will affect the way cases are tried daily in our courts throughout the Commonwealth. By this holding we are encouraging defense counsel not to object to an erroneous jury instruction defining the elements of crime. Furthermore, we are imposing upon trial judges an absolute duty to instruct the jury on the elements of an offense without error and without the assistance of counsel. Prior to today's decision an appellate court could disregard a party's failure to object to an erroneous ruling and address an issue on appeal only where a clear miscarriage of justice resulted. The appellant has utterly failed to demonstrate that the instructional error caused a miscarriage of justice.

In no prior case has the Supreme Court used the "ends of justice" exception to reverse a criminal case merely because a jury instruction given without objection contained a misstatement of

the law. Rather, in *Townes*, 234 Va. at 320, 362 S.E.2d at 657, a capital murder case, the Supreme Court held that a *pro se* defendant was barred by Rule 5:25 (the counterpart of our Rule 5A:18) from challenging on appeal whether a defect existed in a malice instruction. The authority relied upon by the majority does not, in my view, require reversal, nor do I believe that the ends of justice are served by reversing this conviction.

The majority misconstrues and misapplies the Supreme Court's holding in *Jimenez v. Commonwealth*, 241 Va. 244, 402 S.E.2d 678 (1991). That case involves the ends of justice exception as applied to jury instructions where, as a matter of law, the Commonwealth's evidence showed that the appellant was not guilty of a crime. In *Jimenez*, an essential element defining the crime was left out of the instruction. More importantly, the Commonwealth's own evidence negated that Jimenez was guilty of conduct to prove an essential element of the crime for which he was charged and convicted. Thus, the Supreme Court held that Jimenez had been convicted of a crime for which the Commonwealth's own evidence showed he was not guilty. *Id.* at 251, 402 S.E.2d at 681 (citing *Ball v. Commonwealth*, 221 Va. 754, 273 S.E.2d 790 (1981)). Accordingly, the Court held that a miscarriage of justice had occurred because as a matter of law Jimenez was not guilty of *any* crime. Thus, the prosecution against him was dismissed.

Here, the majority does not hold that a miscarriage of justice occurred because as a matter of law Campbell was not guilty. *See id.* at 249-50, 402 S.E.2d at 680-81. In fact, the majority disregards the requirement that before we will consider an error which has not been objected to, "the defendant ha[s] to affirmatively show [that] 'a miscarriage of justice' [has] occurred, not . . . that a miscarriage *might* have occurred." *Brown v. Commonwealth*, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). Instead the majority holds that "[n]o amount of sophistry can eliminate the *hypothesis* that the jury believed the defense [and] . . . applied the facts . . . to the incorrectly drawn instruction, and convicted Campbell." Based on a "hypothesis" of how the jury could have misapplied the law, without considering whether under the law and facts a miscarriage of justice did occur, the majority reverses the conviction and awards a new trial. It is not sufficient that a "hypothesis" existed that a jury might have identified and applied an erroneous aspect of a jury instruction to establish that a miscarriage of jus-

tice has occurred.

In *Jimenez*, the Supreme Court stated "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." *Id.* at 250, 402 S.E.2d at 681 (citing *Bryant v. Commonwealth*, 216 Va. 390, 393, 219 S.E.2d 669, 671 (1975); *Whaley v. Commonwealth*, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973)). In both cases relied upon by the Court in *Jimenez*, the defendants proffered a jury instruction which contained the legal principles essential to the defenses raised. The jury instructions contained correct principles of law as applied to the facts, but the instructions were incorrect because they were argumentative or for other reasons. *See Bryant*, 216 Va. at 392, 219 S.E.2d at 671; *Whaley*, 214 Va. at 354-55, 200 S.E.2d at 557-58. The trial courts in those cases, rather than correcting the instructions by deleting the erroneous language or by giving correct instructions, simply refused the instructions and submitted the cases to the juries with no instructions on the principles of law upon which the defendants relied. In both cases the defendants, by proffering instructions, informed the trial judges of what was requested. Both cases met the requirements of Supreme Court Rule 5:25, the counterpart of our Rule 5A:18, and the statutory mandate of Code § 8.01-384 which provides that the contemporaneous objection rule is satisfied if "a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take . . . and his grounds therefor."

In this case, the appellant accepted without objection the Commonwealth's instruction defining forgery. He made no argument which would have required the trial judge to peruse the instruction more carefully to discern the flaw of which he now complains. Rather, he directed the judge's attention to another legal principle upon which the judge had already ruled. In *Bryant* and in *Whaley*, it was the defendant's instruction and argument about it that called the instruction to the trial judge's attention. Thus, in those cases the instructions were closely scrutinized by the judge because counsel effectively had raised the issue contemporaneously and effectively at trial.

The Supreme Court's steadfastness regarding the contemporaneous objection rule as applied to instructions has been respected by the United States courts. The United States Fourth Circuit

Court of Appeals stated:

> The Virginia [Supreme C]ourt has consistently interpreted these Rules, together with their predecessors, as requiring a contemporaneous objection to a trial court's instructions. *See Whitley v. Patterson*, 204 Va. 36, 129 S.E.2d 19 (1963); *Hale v. Commonwealth*, 165 Va. 808, 183 S.E. 180 (1936); *Nelson v. Commonwealth*, 153 Va. 909, 150 S.E. 407 (1929).

*Frazier v. Weatherholtz*, 572 F.2d 994, 997 (4th Cir.), *cert. denied*, 439 U.S. 876 (1978). Thus, the Fourth Circuit denied the habeas corpus appeal of Edward Allen Dooley and upheld the procedural bar because the Virginia Supreme Court had uniformly and consistently required a contemporaneous objection to a claim of an erroneous instruction in order to preserve the question for appeal.[2] Dooley was convicted of second degree murder. The United States District Court and the Fourth Circuit Court of Appeals ruled that the jury instruction wrongfully placed the burden upon Dooley to prove himself innocent of the charge of murder as opposed to manslaughter. Nevertheless, the Fourth Circuit Court of Appeals, in deference to the historical adherence of Virginia to its contemporaneous objection rule as applied to jury instructions, applied the doctrine in *Wainwright v. Sikes*, 433 U.S. 72 (1977). The *Wainwright* doctrine provides that if a state has a procedural rule consistent with the United States Constitution, such as a rule requiring that a defendant object at trial or be barred from raising an issue on direct appeal, the federal courts on habeas corpus will uphold a conviction and will honor the state's rule. I believe that the Fourth Circuit Court of Appeals accurately described Virginia's application of the contemporaneous objection rule. The majority's decision today departs from the strict manner in which the rule has been applied previously by our courts. In none of the cases cited by the appellant has a criminal conviction in Virginia been set aside merely because of a defective jury instruction which was not objected to in the trial court.

I fail to see why the ends of justice exception requires the reversal of this conviction when other cases, where no contemporaneous objection was made and with similar problems regarding errone-

---

[2] Dooley, along with Frazier, was one of several petitioners in the same case before the Fourth Circuit Court of Appeals.

ous instructions, were upheld on appeal. For instance, in *Hale v. Commonwealth*, 165 Va. 808, 183 S.E. 180 (1936), the jury was erroneously instructed that self-defense must be proven by a preponderance of the evidence. The erroneous instruction would have allowed the jury to convict the defendant even if it had a reasonable doubt based on the evidence of self-defense. Nevertheless, where no miscarriage of justice appeared to have occurred, the Court held that the defendant's failure to point out the defect precluded appellate review. In *Oliver v. Commonwealth*, 151 Va. 533, 145 S.E. 307 (1928), a jury instruction, in effect, told the jury that voluntary manslaughter might be murder. The Court recognized that such error could be "of the gravest moment." Nevertheless, in *Oliver*, where no miscarriage of justice appears to have occurred, the Court refused to reverse the conviction because counsel did not timely object to the defective jury instruction. Although the Court in *Oliver* also relied upon the harmless error doctrine, Oliver's testimony that the shooting was accidental was, in my opinion, much stronger than Judge Campbell's testimony that he was merely joking when he instructed the deputy clerk to change the court records. Certainly, under the rule which the majority announces today, Oliver's conviction should have been reversed.

The majority has erred, in my opinion, because it has used the improper and less rigorous standard that we would have used to determine whether giving the defective instruction would have been harmless error had there been a contemporaneous objection, rather than the more stringent standard required "to affirmatively show" that an unobjected to error has caused a miscarriage of justice to occur. To inquire, as the majority does, whether the error in giving a defective instruction "could" have affected the guilty verdict is simply to engage in a harmless error analysis, *see Lavinder v. Commonwealth*, 12 Va. App. 1003, 1007-09, 407 S.E.2d 910, 911-12 (1991), and to reverse the appellant's conviction after establishing a "hypothesis" by which the jury "could have" used the defective part of the instruction to convict. The ends of justice exception enables an appellate court to consider an error and to disregard the failure to make a contemporaneous objection only in order to prevent a miscarriage of justice, and the defendant must establish more than that an error occurred which "could" have affected the guilty verdict; he must "affirmatively show" that the error did affect the verdict and thereby caused a

miscarriage of justice. By resorting to a harmless error standard to determine whether an error has caused a miscarriage of justice, the majority has imposed a much less rigorous requirement upon an appellant than is necessary to invoke the exception to enable review in order to attain the ends of justice. In addition, the effect of the "harmless error" standard which the majority uses is to shift the burden of requiring the appellant to affirmatively show that the error caused a miscarriage of justice, to require the Commonwealth to negate that the "jury *could* have convicted the defendant" based on a "hypothesis" that the jury believed the defendant's theory that he was joking, but used the erroneous portion of the instruction to convict him. A new rule has been adopted in this case which permits an appellant to raise for the first time on appeal an objection to a defective instruction simply by showing that a scenario "could" be constructed by which the jury presumably reached an incorrect verdict, even though from a fair reading of all the instructions and from the evidence, no miscarriage of justice occurred. Although the majority misapplies a harmless error standard in order to invoke the ends of justice exception, were I to reach the merits of whether giving the instruction which admittedly contained a defect, I would find that the error was harmless.

In my opinion, no rational fact finder could conceivably have believed on this record that Judge Campbell was joking when he instructed the deputy clerk to alter the court's records.

Campbell was a judge in the traffic division of the General District Court of the City of Norfolk. On March 20, 1989, Paul A. Sciortino, Commonwealth's Attorney for the City of Virginia Beach, received a ticket for making an improper turn. Mr. Sciortino was involved in a re-election campaign and, because of prior bad publicity from a traffic accident, he did not wish this charge to be a matter of public record.

Mr. Sciortino and his attorney, Andrew Ege, met with Judge Campbell in chambers. Judge Campbell had been Commonwealth's Attorney in the City of Norfolk and had known Sciortino for many years. During the meeting, Mr. Ege jokingly suggested that the case be dismissed. Judge Campbell mentioned that the usual disposition in such cases was a fine of fifty dollars and asked whether that was "acceptable." Mr. Ege and Sciortino indicated that it would be acceptable. Mr. Ege then asked, "[D]oes it have

to appear on the docket, can we leave it off the docket?" Judge Campbell said "it has to appear on the docket." Mr. Ege then asked, "[W]ell, if his name is misspelled you don't have to correct it, do you?" Judge Campbell responded, in what he testified was a "jokingly or light-hearted manner," that "there are a lot of clerical errors."

Immediately after the meeting in chambers, Mr. Sciortino paid the fifty dollar fine and costs to the clerk.[3] A short time later Judge Campbell went to the deputy clerk who was seated at a computer terminal which maintained the official records of the general district court. He directed her to bring up the record of Mr. Sciortino's case and she did so. He told her to "scramble or jumble" the letters of Mr. Sciortino's last name. The clerk changed the spelling from "Sciortino" to "Schortinoe" and asked the judge, "[H]ow is that?" Judge Campbell then told her to switch the first and middle names. The clerk changed the entry from "Paul A." to "Anthony Paul." Judge Campbell remarked

---

[3] Judge Campbell's explanation:

Q. There came a time when he left, and did you have any further conversation with your office personnel about who he was or about what had happened in terms of hearing this thing?

A. All right. I don't think I went back into my office and shut the door, but I went back towards my office and I don't know, it just struck me about what Andy Ege said, if the name is misspelled, you don't have to correct it. And Sciortino is spelled — peculiar spelling.

I went back over to Mrs. Baker and I said — and I stood there and told all of them, I said, you know, Mr. Sciortino and Mr. Ege — or maybe I didn't use the names, I just said they are scared to death about this accident because Paul thinks that the newspaper is going to crucify him again, and they probably will. And Ege said if his name is misspelled not to correct it. And I said, you know this political thing is really something down in Virginia Beach. Any way, stuff like that.

I asked Mrs. Baker to show it to me on the screen, his name. All right. I don't remember telling her to do any particular things to numbers, but I did say something like scramble or jumble and see what it looks like. She did make some changes. You-all have shown me now what they are. And I don't remember it until I actually saw what they are. She turned around to me. I said, put the middle name first and the last name second. There was no middle name. She told — pointed that out to me. It was Paul A. on the computer. What is the middle name? I think Ms. Duke said Anthony. I may have. I am not sure. But one of us said Anthony. She put that in the computer. And she said — looked around me and said, how's that look? And I said, you pronounce it. She said Sciortino. I said that's right still as far as anybody was concerned it was spelled Sciortino. I didn't say that. I said, that's right. At that point, I don't remember any other conversation except I said something to the fact, that's fine, let's get back to work and walked away.

that Mr. Sciortino was "scared to death about this accident because Paul thinks the newspaper is going to crucify him again, and they probably will."

Campbell testified that his instructions to change the name had been a joke and had been misinterpreted by the clerk as a direction to change the name on the computer records. He did not deny that the incident occurred. The deputy clerk who made the change, as well as two other clerks who were present, testified that Campbell did not give the instructions in a joking manner but did so in a manner consistent with an instruction to change the record. One is left incredulous at Campbell's explanation that after his old friend had asked him to change the public record, which would have required the crime of forgery, he "jokingly" had the deputy clerk call up Mr. Sciortino's record on the computer, instructed her how to change the record, and once the record was changed, turned and walked away without bothering to correct the result of his "joke."

Furthermore, it is noteworthy that no attorney involved in the case, neither the defendant himself, a judge and former prosecutor, nor the experienced trial lawyers representing him, perceived the misstatement in the instruction. The trial judge did not see it. Apparently, the Commonwealth's attorney did not see it. He did not take advantage of it by arguing to the jury that malice was not required to be proven, which was the result of the instruction if it was misread. All of the instructions, with the exception of this one phrase, told the jury that malice and an intent to defraud had to be proven beyond a reasonable doubt. The arguments of both counsel were based upon and reinforced these principles. The appellant's counsel argued, without objection by the Commonwealth, the "joke" defense that Judge Campbell had no malice or intent to defraud. No one argued that, if his actions were a joke, it made no difference. The arguments by counsel assumed, in effect, that if Campbell was only joking and did not intend the forgery, he should be acquitted. Still, the majority assumes that the lay jury seized upon one part of one instruction in disregard of the clear import of the other instructions and "possibly" decided the case based upon a reading of one defective phrase which no trained professional discerned.

As the Supreme Court said of the erroneous instruction in *Oliver* "in all human probability [it] had no more influence on the

verdict than would an instruction addressed to the law of ejectment." 151 Va. at 541, 145 S.E. at 309.

"That no confusion was created by this error and no misinstruction as to the clear cut issue presented, is made manifest by the fact that it was discovered by no one until long after the trial." *Id.* In *Oliver*, the mistake was discovered after the trial but while the case remained in the trial court. Here, it was raised for the first time on appeal. Thus, even though error, which has been properly preserved for appeal, is presumed prejudicial, under the overwhelming evidence of this case, and taking into account the instruction which told the jury that Campbell had to have harbored a criminal intent, I would have found the defect in the instruction to have been harmless error.

Today's decision, in my opinion, shows this Court to be without clear guidance when applying Rule 5A:18 with regard to jury instructions and, for that matter, to other issues. I believe that the ruling in *Mounce v. Commonwealth*, 4 Va. App. 433, 357 S.E.2d 742 (1987), which interpreted previous Supreme Court decisions to require that, for the ends of justice exception to apply, there must be an actual showing of a miscarriage of justice, properly interpreted the cases as handed down by the Supreme Court. The *Jimenez* decision is true to that interpretation. Jimenez, the Supreme Court held, was convicted for acts which were not a crime, an obvious miscarriage. Our decision in *Brown v. Commonwealth* reiterates that it is not sufficient to invoke the ends of justice exception by showing "that a miscarriage [of justice] *might* have occurred . . . 'the error [must] be clear, substantial and material.' " 8 Va. App. at 132, 380 S.E.2d at 11. "The ends of justice exception permits redress in those limited instances of *obvious* injustice." *Id.* at 133, 380 S.E.2d at 11 (emphasis added).

Here, no obvious miscarriage of justice occurred. The evidence that appellant intended to alter a public document with the intent to deceive is overwhelming. In fact, an examination of the record reveals that it would have been difficult for a rational trier of fact to reach any conclusion other than that the appellant intended that the record be altered. Thus, neither under *Mounce*, nor under the ruling in *Brown v. Commonwealth*, is a reversal of the appellant's conviction justified.

The majority's ruling imposes upon the trial judges a previously unrecognized duty to correct defects in the jury instructions to which parties have not objected. Such a requirement will make judges increasingly reluctant to depart from the use of model jury instructions notwithstanding the legislature's contrary admonition. *See* Code § 8.01-379.2 (effective July 1, 1992).

Finally, and most unfortunately, the majority's decision allows what the contemporaneous objection rule was designed to prevent, "a lawyer building error into the record." Now, a lawyer seeing a miscue in an instruction, but realizing that in all probability it will have no effect upon his case, can save the error for the appellate court. Previously, the contemporaneous objection rule prevented such a tactic. *See Kercher v. Richmond, F.& P.R.R.*, 150 Va. 108, 142 S.E. 393 (1928). The accused has another avenue to seek "the ends of justice," the right of habeas corpus to determine whether he was adequately represented. I see no reason that the appellant should not take the same route as innumerable appellants before him who complained that their counsel had not properly objected to instructions. I believe that today's decision not only fails to reach justice in this case, but also has done much to undermine the future administration of justice in the Commonwealth.

Accordingly, on the facts of this case, I believe we should not waive the bar of Rule 5A:18 and should affirm the conviction.