COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Ortiz and Callins

KYLE FRANCIS CHARLES

                                       MEMORANDUM OPINION[*] BY

v.      Record No. 0634-25-2        CHIEF JUDGE MARLA GRAFF DECKER
                                              MARCH 3, 2026

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Allison Mentch, Assistant
Attorney General, on brief), for appellee.

The trial court convicted Kyle Francis Charles on his guilty pleas of three counts of

larceny with the intent to distribute property worth $1,000 or more, in violation of Code

§ 18.2-108.01. Charles argues on appeal that his guilty pleas were not entered "voluntarily,

knowingly, and intelligently." He also contends that the trial court failed to give "proper weight"

to "significant mitigating circumstances" in imposing his sentence. For the following reasons,

we affirm the trial court's judgment.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[3]

On three occasions in February and March 2024, Charles stole merchandise totaling $6,800 from three Target stores in Henrico County. Law enforcement officers determined through investigation that Charles committed similar larcenies at Target stores in other Virginia localities as well as in other states. The total amount of the loss to Target was over $100,000.

At a hearing on March 18, 2025, the trial court conducted a thorough plea colloquy before accepting Charles's guilty pleas. In response to the court's questions, Charles said that he understood the charges and decided for himself to plead guilty because he was in fact guilty. He added he was not coerced or threatened to plead guilty, nor was he made any promises. Charles acknowledged that by pleading guilty, he waived his constitutional rights not to incriminate himself, to remain silent, to a trial by jury, to confront witnesses against him, and to present evidence in his defense. He also recognized that a felony conviction would affect certain civil rights. Charles said he understood the maximum penalty for each offense was twenty years and that the judge was not bound to follow the sentencing guidelines. The court found that Charles understood the nature of the charges and the consequences of his pleas. It further found that his guilty pleas were "made freely, intelligently, voluntarily, and knowingly after receiving advice of competent counsel."

The Commonwealth proffered evidence of the offenses, which Charles accepted as a "fair and accurate summary." Based on the pleas and the proffered evidence, the court found Charles guilty, and the matter proceeded to sentencing. Charles waived the preparation of a presentence report.

---

[3] The appellate court views the evidence in the light most favorable to the prevailing party at trial, in this case the Commonwealth. *Stone v. Commonwealth*, 297 Va. 100, 102 (2019).

Katie Robbins, the "executive team leader for asset protection" at a Target store in Henrico County, testified that Charles's larcenies had a "significant impact" on the company and its employees and customers. She said that the loss of over $100,000 in merchandise in "just several months" from Target stores in and outside the Commonwealth directly affected the stores' ability to manage inventory and meet sales goals. The stores had to devote "additional time and resources towards loss prevention efforts," including "increase[d] security protocols" installing "additional surveillance equipment," and "hiring extra security personnel." Robbins asked the court to consider "the serious and lasting consequences of [Charles's] offenses" in imposing his sentence.

The discretionary sentencing guidelines prepared for Charles provided a recommended sentence between ten months and two years and four months of incarceration. The Commonwealth's attorney argued that the sentencing guidelines did not "accurately reflect proper accountability for the harm" that Charles did to "Target as a whole" as well as to "regular law[-]abiding citizens." The prosecutor asked the court to deviate from the recommended sentence and impose ten years of incarceration.

Defense counsel proffered evidence in support of mitigation. He said that Charles was thirty-seven years old, from New York, had three children, and previously worked at a car dealership. Charles lost his job after he violated his federal probation by traveling outside the country. Counsel represented that Charles's life then "stumbled out of control." According to counsel, Charles wanted to accept responsibility for his actions by pleading guilty and showed "great remorse." He argued that the guidelines were appropriate. He asked the court to run his sentence concurrently with the sentence of two years and two months he received in Chesterfield County for a similar Target larceny there.

In allocution, Charles apologized to "the corporation," "the Commonwealth," and the trial judge. He said he began shoplifting to pay his bills after he lost his job and kept doing it because he was not caught. Charles admitted that stealing from Target "wasn't right." He said he wanted to return home as quickly as possible so he could "get a job" and pay restitution.

The court found that Charles was minimizing his offenses and was not truly remorseful. It noted that the total value of the stolen merchandise was more than "the average [Target] customer makes [in] a year." The judge reasoned that the large scale of the larcenies negatively impacted customers because ultimately they faced higher prices. The court explained it was deviating from the guidelines because Charles committed an "organized commercial theft" that negatively impacted the community and he did not "appreciate the severity of his actions." It noted that Charles had eight or more larceny-type offenses on his record, as well as robberies, assaults, and gun charges from other jurisdictions.

Charles was sentenced to sixty years in prison with fifty-two years suspended. The trial court denied his request to run the sentence concurrently. The court determined that the $6,800 owed to Target would be docketed as a judgment and ordered Charles to pay $275 per month in restitution as a condition of his probation.

ANALYSIS

Charles contends on appeal that his guilty pleas were not made "voluntarily, knowingly, and intelligently" and the trial court did not give appropriate weight to "significant mitigating circumstances" in imposing his sentence. This Court considers these issues in turn.

I. Guilty Pleas

Charles argues that the record failed to establish that he "was given notice of the elements of" his offenses "or what the Commonwealth must prove before [he] could be found guilty." He suggests that the court erred by not asking certain questions found in "Form 6" of the Appendix

to Part 3A of the Rules of the Virginia Supreme Court. He concedes that he did not preserve this argument but asks this Court to consider it under the good-cause and ends-of-justice exceptions to Rule 5A:18.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). An objection "must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

"'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). "The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court." *Miles v. Commonwealth*, 78 Va. App. 73, 84 n.4 (2023) (quoting *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011)). But "when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Id.* (quoting *Perry*, 58 Va. App. at 667).

The record here does not support applying the good-cause exception. The trial court accepted Charles's guilty pleas on March 18, 2025. Charles noted his *pro se* appeal to challenge his sentence before the trial court entered the final judgment on April 2, 2025. Appellate counsel was appointed on April 11, 2025. Charles could have made a timely motion to withdraw his guilty pleas until April 23, 2025. *See* Code § 19.2-296 (providing that a defendant may

withdraw his guilty plea within twenty-one days of the entry of a final order "to correct manifest injustice"[4]). Nothing in the record suggests that Charles did not have the opportunity to seek to withdraw his pleas. His current claim that he did not know the consequences of the pleas until it was too late to withdraw does not establish good cause to excuse the procedural default.

The ends-of-justice exception contained in Rule 5A:18 also does not apply. The exception is "narrow and is to be used sparingly." *Bell v. Commonwealth*, 81 Va. App. 616, 628 (2024) (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018)). Whether to apply the exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest [grave] injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). And an appellant "*must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). "Where the record does not affirmatively establish error, [the Court] cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

A "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see Terry v. Commonwealth*, 30 Va. App. 192, 197 (1999) (en banc). Therefore, to withstand scrutiny on appeal, the record must contain "an affirmative

---

[4] "A manifest injustice 'amounts to an obvious miscarriage of justice' or '[a] direct, obvious, and observable error in a trial court.'" *Brown v. Commonwealth*, 297 Va. 295, 300 (2019) (alteration in original) (quoting *Velazquez v. Commonwealth*, 292 Va. 603, 616 (2016)).

showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see Graham v. Commonwealth*, 11 Va. App. 133, 139 (1990). Consistent with those principles, Rule 3A:8(b)(1) provides that a trial court "may not accept a plea of guilty or nolo contendere to a felony charge without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea."

The record refutes Charles's claim that he was not given notice of the elements of the crimes charged. He contends that he should have been asked certain questions found on Form 6 in the Appendix to Part 3A of the Rules of the Supreme Court, namely:

> 7. Has your attorney reviewed with you the nature of the charge(s) pending against you?
>
> 8. Do you fully understand those charges(s), as explained to you by your attorney?
>
> 9. Did you have sufficient time to discuss with your attorney the facts of the case and the legal elements of the charge(s)?
>
> 10. Do you understand what facts the Commonwealth would be required to prove beyond a reasonable doubt in open court before this court could find you guilty of the charge(s)?

But the questions in the form are *suggested*. A trial court need not follow that exact language. The questions the court asked during the plea colloquy addressed those same points. Charles told the court that he had discussed the charges "in detail" as well as "any possible defenses" with his attorney and had sufficient time to do so. Further, he said he decided for himself to plead guilty because he was in fact guilty.

Additionally, contrary to Charles's claim that he was not asked whether he understood he was giving up basic guaranteed constitutional rights, Charles acknowledged that by pleading guilty he waived his constitutional rights not to incriminate himself, to remain silent, to a trial by jury, to confront witnesses against him, to present evidence in his defense, and to appeal certain decisions of the court. He also knew that pleading guilty would affect his rights to vote, possess

ammunition and a firearm, and sit on a jury. Charles acknowledged that the maximum penalty for each offense was twenty years in prison and that the trial court was not bound by the discretionary sentencing guidelines.

The trial court determined from Charles's responses to the questions asked that he understood the nature of the offenses and the consequences of pleading guilty. Accordingly, the court accepted Charles's guilty pleas as "made freely, intelligently, voluntarily, and knowingly after receiving advice of competent counsel." *See* Rule 3A:8(b)(1); *James v. Commonwealth*, 18 Va. App. 746, 750 (1994) (noting that in the absence of an affirmative showing that a guilty plea is entered "intelligently, voluntarily, and knowingly, . . . the trial court . . . is . . . required[] to reject the plea" (quoting *Graham*, 11 Va. App. at 139)). The record affirmatively shows that Charles's guilty pleas were voluntary and met all of the requirements associated with a guilty plea. Consequently, he has not established that a miscarriage of justice occurred. *See Melick*, 69 Va. App. at 146. Therefore, the ends-of-justice exception contained in Rule 5A:18 does not apply, and Charles's claim is waived.

## II. Sentencing

Charles argues that the trial court abused its discretion in sentencing him because the court did not properly consider his mitigating circumstances and imposed an unduly "harsh" sentence above the high end of the sentencing guidelines. We disagree.

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* Imposing a sentence on a defendant is a matter of court discretion. *See id.* at 564-65. "Only when reasonable jurists could not differ can we say an

abuse of discretion has occurred." *Cellucci v. Commonwealth*, 77 Va. App. 36, 46 (2023) (en banc) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). "A trial court abuses its discretion by failing to consider a significant relevant factor, giving significant weight to an irrelevant or improper factor, committing a clear error of judgment, or making a mistake of law." *Id.*; *see Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013).

In sentencing decisions, a court does not abuse its discretion "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). Generally, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

The trial court sentenced Charles within the statutory range for the offenses. *See* Code § 18.2-108.01(A) (setting the range between two and twenty years). The fact that the court did not follow the sentencing guidelines does not mean the court abused its discretion. The guidelines are not mandatory. *See* Code § 19.2-298.01(A); *Woodard v. Commonwealth*, 287 Va. 276, 281 (2014). They "do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). Further, the court's decision not to follow the guidelines is "not . . . reviewable on appeal." *See* Code § 19.2-298.01(F); *Runyon*, 29 Va. App. at 578.

Charles argues that the trial court did not properly consider mitigating factors, but—like other sentencing matters—the weight to give mitigating evidence falls within the trial court's discretion. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Mitigating evidence "tend[s] to lessen an accused's moral culpability for the crime committed." *Cellucci*, 77 Va. App. at 49 (quoting *Wilson v. Commonwealth*, 54 Va. App. 631, 642 (2009)). If a trial court

does not find mitigation evidence compelling when weighed against other evidence in the case, it is "not required to give controlling effect to the mitigating evidence." *Sheets v. Commonwealth*, 80 Va. App. 706, 718 (2024) (quoting *Reid v. Commonwealth*, 256 Va. 561, 569 (1998)); *see Cellucci*, 77 Va. App. at 52 n.9. And "[b]arring clear evidence to the contrary, [an appellate court] will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Sheets*, 80 Va. App. at 718-19 (second alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992)).

As evidence in mitigation, Charles proffered that he was thirty-seven years old, had three children, and was employed until he violated his federal probation by leaving the country. He contends that he accepted responsibility by pleading guilty and showed remorse by apologizing to Target, the Commonwealth, and the court, as well as by wanting to make restitution. But he admitted that even though he knew stealing "wasn't right," he continued to do it to pay his bills because he was not caught. Charles had eight larceny-type crimes on his record, including similar convictions for theft at other Target stores, as well as convictions for robberies, assaults, and firearm violations. He stole merchandise worth $6,800 from three Target stores in Henrico County, and the total loss to Target from all of his thefts in Virginia and elsewhere exceeded $100,000.

The trial court found that although Charles claimed to be remorseful, he did not "appreciate the severity of his actions." After weighing all the evidence, the court imposed the sentence it deemed appropriate. Because that sentence "does not exceed [the statutory] maximum" and is supported by the record, it will not be overturned as an abuse of discretion. *Minh Duy Du*, 292 Va. at 564 (quoting *Alston*, 274 Va. at 771-72); *see Sheets*, 80 Va. App. at 719.

CONCLUSION

Rule 5A:18 bars consideration of Charles's assignment of error challenging the trial court's acceptance of his guilty pleas. Further, the trial court did not abuse its discretion when it sentenced Charles within the statutory range. For these reasons, the judgment is affirmed. We remand the case to the circuit court solely for the correction of apparent clerical errors in the sentencing order.[5]

*Affirmed and remanded.*

---

[5] The order describes the offenses as "attempt to commit larceny." It should properly reflect that Charles was convicted of larceny in violation of Code § 18.2-108.01(A). The sentencing order also provides an incorrect offense date of May 5, 2024 for case number CR24-3694. The indictment and transcript identify the date of the offense as March 5, 2024. We therefore remand to the trial court to correct these apparent clerical errors in the sentencing order. *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).